IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

SEP 1 8 2002

Michael N. Milby
Clerk of Court

OSWALDO CALDERON-TERRAZAS          )
                                   )
v.                                 )
                                   )    CIVIL ACTION NO. B-02-145
AARON CABRERA, ACTING              )
DIRECTOR, HLG/DO, THE              )
IMMIGRATION & NATURALIZATION       )
SERVICE, and                       )
JOHN ASHCROFT, UNITED STATES       )
ATTORNEY GENERAL                   )
_____    )


RESPONDENTS' RETURN AND
MOTION TO DISMISS
PETITION FOR WRIT OF HABEAS CORPUS


COME NOW the Respondents, by and through Michael T. Shelby,

United States Attorney for the Southern District of Texas, and file

this Return and Motion to Dismiss the Petition for Writ of Habeas

Corpus in this case.  The petition for writ of habeas corpus should

be dismissed because the issues presented therein have been decided

by the Fifth Circuit Court of Appeals.[1]

_____

[1] The issues presented and arguments made herein are similar to
those presented to this Court in Salazar-Regino v. Trominski, et
al., Civil Action No. B-02-045.

## STATEMENT OF THE FACTS

The Petitioner, Oswaldo Calderon-Terrazas ("Calderon-Terrazas") adjusted his status in the United States to that of a lawful permanent resident on July 13, 1990.  A criminal indictment was filed charging Calderon-Terrazas with two counts of sexual assault of a child in violation of the Texas Penal Code.  He entered a plea of guilty on January 9, 2001, in the 347th District Court, Nueces County, Texas, to the two counts of sexual assault of a child, a second degree felony.  Adjudication of guilt was deferred and he was placed on community supervision for a period of six years. Government Exh. "A".

The Immigration and Naturalization Service (the "Service") issued a Notice to Appear to Calderon-Terrazas on January 17, 2002, charging that he was removable pursuant to §237(a)(2)(A)(iii) of the Immigration and Nationality Act ("Act"), 8 U.S.C. §1227 (a)(2)(A)(iii) for having been convicted of an aggravated felony as defined in §101(a)(43)(A) of the Act (sexual abuse of a minor). Government Exh. "B".  Calderon-Terrazas, through counsel, admitted the allegations of fact numbered 1-3 as set out in the Notice to Appear, but denied the allegation of fact and charge of removability based on the conviction.  Government Exh. "C", 2.  At the hearing on February 25, 2002, the immigration judge denied Calderon-Terrazas the opportunity to apply for relief from removal, finding he was

ineligible for cancellation of removal because he had been convicted of an aggravated felony. Id. at 3-4. As a consequence, the immigration judge ordered his removal to Mexico. Government Exh. "D".

Calderon-Terrazas reserved his right to appeal and timely filed his Notice of Appeal with the Board of Immigration Appeals ("Board"). The Notice of Appeal alleged that the immigration judge erred in ordering Petitioner removed as a person who has been convicted of an aggravated felony because Calderon-Terrazas received deferred adjudication which is not a conviction for immigration purposes. He further alleged that the Board's decision in Matter of Salazar-Regino, 23 I&N Dec. 223 (BIA 2002) and the Ninth Circuit Court of Appeals' ("Ninth Circuit") decision in Lujan-Armendariz v. INS, 222 F.3d 728 (9th Cir. 2000) violated his equal protection. Government Exh. "E". In his appeal brief to the Board, Calderon-Terrazas argued those same issues.

In a decision dated June 25, 2002, the Board dismissed Calderon-Terrazas' appeal. The Board affirmed without opinion the decision of the immigration judge pursuant to 8 C.F.R. §3.1(a)(7). Government Exh. "F". Calderon-Terrazas then filed the instant petition.

## ARGUMENT

### I. CALDERON-TERRAZAS HAS BEEN CONVICTED OF AN OFFENSE THAT IS A VIOLATION OF A LAW RELATING TO THE SEXUAL ABUSE OF A MINOR EVEN THOUGH, AFTER A PLEA OF GUILTY, ADJUDICATION OF GUILT WAS DEFERRED AND HE WAS PLACED ON SIX YEARS COMMUNITY SUPERVISION.

Calderon-Terrazas argues that he is not removable as charged because he is not properly considered convicted under the definition set forth at §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48). Because Calderon-Terrazas's petition is dependant on the construction of §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48), the Court should have an understanding of the history and policy concerns that determined whether an alien would be considered to be convicted for immigration purposes prior to 1996. Although a lot of the cases cited herein relate to drug offenses, the overall recitation will be helpful in illustrating the inconsistencies in the interpretation of the immigration law as it related to "convictions" prior to 1996.

Prior to the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3546 (September 30, 1996) ("IIRIRA"), the Act did not contain a definition of the term "conviction." Its meaning was determined on a case-by-case basis in administrative and judicial decisions. Depending upon the policies and procedures involved, an alien's

4

guilty plea and criminal disposition might -- or might not -- constitute a "conviction" for immigration purposes.

For example, the Board had a 40-year policy that a state conviction for a crime involving moral turpitude which had been set aside or vacated for rehabilitative reasons would not count as a conviction for deportation purposes. See Matter of Ozkok, 19 I & N Dec. 546, 548-59 (BIA 1988); Matter of Ibarra-Obando, 12 I & N Dec. 576 (BIA 1966; A.G. 1967); Matter of G-, 9 I & N Dec. 159 (BIA 1960; A.G. 1961); Matter of A-F-, 8 I & N Dec. 429, 455 (BIA, A.G. 1959).[2] The Attorney General refused to extend this policy to drug convictions, however. Thus, in 1959 the Attorney General decided that an alien's drug conviction would still count for immigration purposes, regardless of whether it had been vacated, expunged, or dismissed for rehabilitative reasons under state law, because this would promote uniform application of the immigration laws and would be consistent with Congress' strict policy against drug offenders. Matter of A-F-, 8 I & N Dec. 429, 455 (BIA, A.G. 1959).

In 1972, the First Circuit Court of Appeals ("First Circuit"), decided not to consider a conviction that had been set aside under the Federal Youth Corrections Act ("FYCA") to be a "conviction" for immigration purposes, because the First Circuit made the policy

---

[2]    This policy was repeatedly challenged within the agency during the 1960's, but the Board maintained its policy toward expunged or vacated state convictions involving moral turpitude because the policy was longstanding and there was no congressional intent to the contrary. See Matter of G-, 9 I & N at 164-65.

decision that it was more important to give greater priority to Congress' criminal policy of leniency toward youthful offenders than to its immigration policy of deporting drug offenders.  <u>Mestre Morera v. INS</u>, 462 F.2d 1030 (1st Cir. 1972).  Two years later, in 1974, the Board also made this policy choice, deciding not to consider a drug charge that had been expunged under the FYCA to be a conviction for immigration purposes.  <u>Matter of Zingis</u>, 14 I & N Dec. 621 (BIA 1974).

That same year then-Solicitor General Bork urged the Board to construe the term "conviction" generously in favor of aliens, give effect to state rehabilitative statutes, and extend to state youthful and first-time drug offenders guilty of simple possession the same policy of leniency the Board had extended to federal offenders.  <u>Matter of Andrade</u>, 14 I & N Dec. 651, 654 (BIA 1974) (Memorandum of Solicitor General).  The Board followed this recommendation, holding that the Federal First Offender Act ("FFOA") was the equivalent of the FYCA, and that as a matter of policy a drug conviction "expunged" under the FFOA, or a state "counterpart," would not be considered a conviction for immigration purposes.  <u>Matter of Werk</u>, 16 I & n Dec. 234 (BIA 1977); <u>Matter of Kaneda</u>, 16 I & N Dec. 677 (BIA 1979); <u>Matter of Haddad</u>, 16 I & N Dec. 253 (BIA 1977).  The Board chose to apply this new policy narrowly, however, and considered drug offenders who were given rehabilitative treatment under state statutes that were broader in

scope than the federal first-offender statute to have a
"conviction" for immigration purposes.  Matter of Deris, 20 I & N
Dec. 5 (BIA 1989).

The policy decisions were made against the backdrop of an
administrative construction of "conviction" that also required the
following:  (1) a judicial finding of guilt, (2) some court action
removing a defendant's case from active consideration, such as a
fine, sentence, or suspension of sentence, and (3) that the
disposition was considered to be a conviction by the state, at
least for some purpose.  See Matter of L-R, 8 I & N Dec. 269 (BIA
1959).  By 1988, however, the Board had concluded that its
interpretation of what constituted a conviction was unsatisfactory,
because it did not fully encompass conviction-deferral procedures
or prejudgment probation, i.e. dispositions in which aliens
formally admitted their guilt but thereafter deferred proceedings
and avoided a formal conviction, through a variety of state
procedures.  See Matter of Ozkok, 19 I & N Dec. 546.  In addition,
the Board was concerned that the variety of state rehabilitative
procedures and the rulings regarding expungements were leading to
"anomalous and unfair results" and were permitting aliens who were
clearly guilty of criminal conduct, and whom Congress intended to
be considered convicted, to escape the immigration consequences of
their conduct.  Id. at 551. The Board adopted what it hoped would
be a uniform federal standard defining "conviction." Id.  For

7

formal judgments, the Board concluded that it would consider a person to be convicted if "the Court has adjudicated him guilty or has entered a formal judgment of guilt." Id.

For "deferred adjudications" -- where a formal judgment was deferred or withheld pending probation -- the Board decided that a "conviction" should exist for immigration purposes if the following requirements were met:

> (1) a judge or jury has found the alien guilty or he has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt;
>
> (2) the judge has ordered some form of punishment, penalty, or restraint on the person's liberty to be imposed (including but not limited to incarceration, probation, a fine or restitution, or community-based sanctions such as a rehabilitation program, a work-release or study-release program, revocation or suspension of a driver's license, deprivation of non-essential activities or privileges, or community service); and
>
> (3) a judgment or adjudication of guilt may be entered if the person violates the terms of his probation or fails to comply with the requirements of the court's order, without availability of further proceedings regarding the person's guilt or innocence of the original charge.

Matter of Ozkok, 19 I & N Dec. at 551-52.

This did not lead to the uniformity of result the Board had intended. Instead, criminal aliens who pled or were found guilty of an offense and had been sentenced to probation could still escape the immigration consequences of their conduct depending on

the state procedures involved. Compare Martinez-Montoya v. INS, 904 F.2d 1018, 1021 (5th Cir. 1990) (holding that Texas guilty plea, withheld conviction, and probation is not a conviction for immigration purposes), with Yanez-Popp v. INS, 998 F.2d 231 (4th Cir. 1993) (holding that Maryland guilty plea without entry of judgment, plus probation, is a conviction) and Molina v. INS, 981 F.2d 14 (1st Cir. 1992) (holding that Rhode Island nolo contendere plea plus probation is a conviction).

In the 1990s, the Board reconsidered its policy toward first-time state drug offenders whose convictions had been vacated or expunged. In Matter of Manrique, Int. Dec. 3250, 1995 WL 314732 (BIA 1995), the Board decided that it would not consider a vacated state drug offense to be a conviction for immigration purposes if (1) the alien was convicted of simple possession; (2) it was his first offense; (3) he had received no previous first-offender treatment, and (4) the court entered an order pursuant to a state rehabilitative statute under which "the alien's criminal proceedings have been deferred pending successful completion of probation or the proceedings have been or will be dismissed after probation." Id. at 12.

Thus, as shown above, by 1996 there was no one, uniform federal definition of conviction for immigration purposes. Instead, there were a variety of exceptions that had evolved by balancing concerns about finality, respect for state dispositions,

alien entered by a court or, if adjudication of
guilt has been withheld, where--

(i)  a judge or jury as found the alien guilty
or the alien has entered a plea of guilty or
nolo contendere or has admitted sufficient
facts to warrant a finding of guilt, and

(ii) the judge has ordered some form of
punishment, penalty, or restraint on the
alien's liberty to be imposed.

(B)  Any reference to a term of imprisonment or
a sentence with respect to an offense is deemed
to include the period of incarceration or
confinement ordered by a court of law
regardless of any suspension of the imposition
or execution of that imprisonment or sentence
in whole or in part.

See §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48).  The Joint

Conference Report commented on the congressional intent in drafting

this provision as follows:

> This section deliberately broadens the scope of
> the definition of "conviction" beyond that
> adopted by the Board of Immigration Appeals in
> Matter of Ozkok, 19 I & N Dec. 546.  As the
> Board noted in Ozkok, there exist in the
> various States a myriad of provisions for
> ameliorating the effects of a conviction.  As a
> result, aliens who have clearly been guilty of
> criminal behavior and whom Congress intended to
> be considered "convicted" have escaped the
> immigration consequences normally attendant
> upon a conviction.  Ozkok, while making it more
> difficult for alien criminals to escape such
> consequences, does not go far enough to address
> situations where a judgment of guilt or
> imposition of sentence is suspended,
> conditioned upon the alien's future good
> behavior.  For example, the third prong of
> Ozkok requires that a judgment or adjudication
> of guilt may be entered if the alien violates a
> term or condition of probation, without the

> need for any further proceedings regarding
> guilt or innocence on the original charge.  In
> some States, adjudication may be "deferred"
> upon a finding or confession of guilt, and a
> final judgment of guilt may not be imposed if
> the alien violates probation until there is an
> additional proceeding regarding the alien's
> guilt or innocence.  In such cases, the third
> prong of the Ozkok definition prevents the
> original finding or confession of guilt to be
> considered a "conviction" for deportation
> purposes.
>
> This new provision, by removing the third
> prong of Ozkok, clarifies Congressional intent
> that even in cases where adjudication is
> "deferred," the original finding or confession
> of guilt is sufficient to establish a
> "conviction" for purposes of the immigration
> laws.

H.R. Conf. Rep. No. 828, 104th Cong., 2nd Sess. 224 (1996) 1996 WL

563320 *496-97 [Leg.History](emphasis added).

Section 101(a)(48) of the Act, 8 U.S.C. §1101(a)(48), creates

a uniform definition of conviction that is no longer dependent upon

the vagaries of state law, and that requires an alien who has pled

guilty and received a deferred adjudication and some form of

probation to be considered convicted for immigration purposes,

regardless of whether there are further proceedings available on

the issue of guilt or innocence upon his violation of probation.

Moosa v. INS, 171 F.3d 994, 1004-06 (5th Cir. 1999); see also

Matter of Punu, Int. Dec. 3364 (BIA 1999) (the third prong of Ozkok

for determining whether a conviction exists with regard to deferred

adjudication has been eliminated by §101(a)(48) of the Act, 8

U.S.C. §1101(a)(48) and deferred adjudication in Texas is a conviction for immigration purposes); <u>Matter of Roldan-Santoyo</u>, Int. Dec. 3377 (BIA 1999) (an alien has been convicted for immigration purposes where there is a finding or admission of guilt and some punishment is imposed).

As shown, Calderon-Terrazas pled guilty in state court to sexual assault of a child and was placed on community supervision. Pursuant to §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48), this properly constitutes a conviction because there was a guilty plea and some form of punishment or restraint on liberty.  Section 101(a)(48) of the Act, 8 U.S.C. §1101(a)(48), eliminates the prior administrative and judicial exceptions for state deferred adjudications, prejudgment probations, vacated or expunged offenses, or first-time state drug offenses.  The plain reading of the statute supports this conclusion.

> A.   <u>Congress' intent is clear and
> unambiguous:  the plain language of the
> statute requires only a formal judgment of
> guilt, or a plea and some form of
> restraint on liberty, and there is no
> exception for vacated, dismissed, or
> expunged convictions and none may be
> implied.</u>

The starting point for statutory construction is the language of the statute.  <u>See</u> <u>INS v. Phinpathya</u>, 464 U.S. 183, 188 (1984); <u>see also</u> <u>INS v. Cardoza-Fonseca</u>, 480 U.S. 421. 431 (1987).  The

plain meaning of the words used is the paramount indicia of congressional intent. Cardoza-Fonseca, 480 U.S. at 431. It is assumed that the legislative purpose is expressed by the plain meaning of the words used. Phinpathya, 464 U.S. at 189.

The plain language of §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48), states that "the term 'conviction' means . . . the alien has entered a plea of guilty . . . and the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed." §101(a)(48)(A) of the Act, 8 U.S.C. §1101(a)(48)(A). As the Fifth Circuit has noted, the language of the statute is plain and clear. See Moosa v. INS, 171 F.3d at 1005. Under the Fifth Circuit's reading of the statute, there is no question that Calderon-Terrazas' disposition comes squarely within this definition, because he pled guilty to sexual assault of a child and was given community supervision.

When a definition declares what a term "means" -- as opposed to what it "includes" -- it excludes any meaning that is not stated. Colautti v. Franklin, 439 U.S. 379 (1978). In addition, as the Supreme Court has made very clear, exceptions to a statutory definition of "conviction" must be expressly stated and may not be implied. See Dickerson v. New Banner Institute, Inc., 460 U.S. 103, 111 (1983), superseded by statute as stated in United States v. Sherbondy, 865 F.2d 996 (9th Cir. 1988); Andrus v. Glover Construction Co., 446 U.S. 608 (1980).

14

The definition of a conviction states, _inter alia_, that it
"**means**" a guilty plea and some form of imposition on liberty.
§101(a)(48) of the Act, 8 U.S.C. §1101(a)(48) (emphasis added).
See Moosa v. INS, 171 F.3d at 1005. "No modifier is present, and
nothing suggest[s] any restriction on the scope of the term
'convict[ion].'" _Dickerson_, 460 U.S. at 111.  "Nothing on the face
of the statute suggests a congressional intent to limit its
coverage."  _Id._  There are no exceptions for the kinds of state
dispositions that the Board previously determined would not be
considered a "conviction" for reasons of policy, such as vacated or
expunged state convictions, or first-time drug offenses of simple
possession under federal or state law.

Since this is the case, Calderon-Terrazas has been "convicted"
for federal immigration purposes under the plain meaning of the
statute.  He pled guilty to sexual assault of a child and he was
given six years community supervision.  It is clear that Congress
intended him to be considered convicted for immigration purposes.
Congress has spoken to the precise question at issue.  Its intent
is clear.

**B.    Congress' intent is also clear and unambiguous, because the Committee Report shows that  Congress intended to "broade[n]" the definition of "conviction," eliminate the effects of ameliorating statutes, make guilt not rehabilitation  the dispositive factor, and prevent aliens who are guilty of criminal conduct from escaping the immigration consequences of their crimes.**

A clear statement of legislative purpose in a committee report is powerful evidence of Congress' intent and should be given effect.  See Cardoza-Fonseca, 480 U.S. 428; Mastro Plastics Corp. v. NLRB, 350 U.S. 270 (1956); Church of the Holy Trinity v. United States, 143 U.S. 457 (1892).

Congress explicitly stated in the Committee Report that the purpose of adding §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48), was to **"deliberately broade[n]"** the preexisting definition of a conviction set forth in Ozkok.  See H.R. Conf. Rep. No. 828, 104th Cong., 2nd Sess. 224 (1996) (emphasis added).  This shows that Congress was dissatisfied with the preexisting interpretation of what constituted a conviction, and intended to expand it to include more kinds of dispositions than previously covered.

The Committee Report shows that Congress clearly intended the dispositive factor for determining whether an alien has been convicted for immigration purposes to be whether he is **guilty of criminal conduct** -- not the type of disposition he received or

whether he is eligible for rehabilitative treatment of some type.

Thus, in the Committee Report Congress states:

> As a result [of ameliorating provisions],
> aliens who have clearly been guilty of criminal
> behavior and whom Congress intended to be
> considered "convicted" have escaped the
> immigration consequences normally attendant
> upon a conviction.

H.R. Conf. Rep. No. 828, 104th Cong., 2nd Sess. 224 (1996).  The

Committee Report also states that Congress wanted to stop treatment

"that **prevents the original finding or confession of guilt to be**

**considered a 'conviction' for deportation purposes**" and that

Congress was seeking **to "clarif[y] [its] intent that . . . the**

**original finding or confession of guilt is sufficient to establish**

**a 'conviction' for purposes of the immigration laws.**"  Id.

(emphasis added).[3]

The Committee Report demonstrates a clear and unambiguous

intent on Congress' part to make the type of disposition that

Calderon-Terrazas received a conviction for immigration purposes.

It states that Congress wants to ensure that an alien who pleads

guilty -- as Calderon-Terrazas did -- cannot escape the immigration

consequences of his criminal conduct.  Most importantly, it rejects

the policies of leniency, rehabilitation, and deference to

---

[3]  These latter two statements were made by Congress addressing, by
way of example, "deferred adjudications," or the types of state
dispositions that deferred or withheld judgment upon probation but
then required some further proceeding on guilt or innocence upon a
violation of probation.

differing laws that led the Board and the courts to adopt the
preexisting state exceptions to the definition of a conviction.
Accordingly, the Committee Report  -- like the plain language of
the statute -- makes clear that Congress intended Calderon-Terrazas
to be "convicted" for immigration purposes because of his guilty
plea and probation.

> C.    Congress' intent is clear and
> unambiguous:  other related provisions of
> the Act and their legislative history show
> that Congress has now implemented a tough
> new immigration policy toward criminal
> aliens that rejects leniency and
> rehabilitation in favor of removal.

It is well settled that in determining the meaning of a
statute, all related parts of the statute should be construed
together.   See, e.g., Sanford v. Commissioner, IRS, 308 U.S. 39
(1939).  Each provision that pertains to the same subject must be
construed in pari materia with other sections on the same subject,
and this rule has the greatest force where statutes were enacted at
the same time.  United States v. Steward, 311 U.S. 60 (1940);
Erlenbaugh v. United States, 452 U.S. 967 (1972); 2B Singer,
Sutherland Statutory Construction §51.03 at 140 (5th ed. 1992).
Construing §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48), in pari
materia with other provisions enacted in IIRIRA, it is clear that
the Board's construction in the present case reflects a new,
tougher policy on Congress' part toward criminal aliens, which does

18

not want them to be treated leniently.  Section 101(a)(48) of the
Act, 8 U.S.C. §1101(a)(48), was one of several amendments in IIRIRA
that were designed to implement this policy.  In addition to
enacting the section, Congress also enacted a provision that
expands the number of crimes that render an alien deportable for
commission of an "aggravated felony.  See §101(a)(43) of the Act, 8
U.S.C. §1101(a)(43) (Supp. IV 1998).  It created new custody rules
mandating the detention of criminal aliens pending their
proceedings.  See §236(c) of the Act, 8 U.S.C. §1226(c) (Supp. IV
1998).  It withdrew discretionary relief for criminal aliens.  See
§242A of the Act, 8 U.S.C. §1229a (Supp. IV 1998).  And, Congress
eliminated judicial review for several kinds of criminal aliens.
See §242(a)(2)(C) of the Act, 8 U.S.C. §1229(a)(2)(C).

       Indeed, the legislative history of the bills that eventually
became IIRIRA are replete with concerns about recidivism.  It was
in this context that Congress enacted IIRIRA in 1996 and the
definition of "conviction" in §101(a)(48) of the Act, 8 U.S.C.
§1101(a)(48).  Congress' concerns about the unacceptably high rate
of recidivism of criminal aliens, and the threat they pose to
public safety shows a clear intent to reach all aliens - like
Calderon-Terrazas - who are guilty of criminal conduct and to not
afford them any leniency, especially by giving effect to
rehabilitative procedures or policies that would permit them to

19

avoid removal.  Section 101(a)(48) of the Act, 8 U.S.C. §1101(a)(48), implements that intent.

## II. CALDERON-TERRAZAS HAS BEEN CONVICTED OF AN AGGRAVATED FELONY AND IS INELIGIBLE FOR RELIEF.

Calderon-Terrazas argues that he has not been convicted of an aggravated felony and was erroneously denied his right to apply for relief from removal in the form of cancellation of removal pursuant to §240(A)(a) of the Act.  Section 240A(a) allows the Attorney General to cancel the removal of an individual who:

> (1) has been an alien lawfully admitted for permanent residence for not less than 5 years,
>
> (2) has resided in the United States continuously for 7 years after having been admitted in any status, and
>
> (3) has not been convicted of any aggravated felony.

The term "aggravated felony" was first added to the Act by §7342 of the Anti-Drug Abuse Act of 1988, Pub. L. 100-690, 102 Stat. 4181.  The term was first defined within the federal sentencing guidelines.  The types of crimes with immigration consequences have expanded over the years to its present definition. §101(a)(43) of the Act, 8 U.S.C. §1101(a)(43).  Included in the definition of "aggravated felony" is "sexual abuse of a minor." §101(a)(43)(A) of the Act, 8 U.S.C. §1101(a)(43)(A).

Calderon-Terrazas argues that his deferred adjudication does not amount to a "conviction" and, therefore, he should have been afforded the opportunity to apply for relief from removal. However, as set forth above, the deferred adjudication is a "conviction" for immigration purposes.

Calderon-Terrazas was convicted under the Texas Penal Code §22.011 for sexual assault of a child. This offense is a second degree felony. In the State of Texas, a second degree felony is punishable by a term of imprisonment of not more than twenty years or less than two years. *Tex. Penal Code Ann.* §12.33 (Vernon 1998). The fact that adjudication of guilty was deferred and that Calderon-Terrazas received community supervision and not a term of imprisonment is irrelevant. The offense Calderon-Terrazas was convicted of is a **felony** that is **punishable** for a term of more than one year. Therefore, the definition of "aggravated felony" applies to this case and Calderon-Terrazas has been convicted of a crime classified as an aggravated felony.

Calderon-Terrazas's claim that applying the Board's decision in Matter of Roldan-Santoyo, Int. Dec. 3377 (BIA 1999) to his case deprives him of procedural due process involving fair notice is suspect. Calderon-Terrazas's conviction was entered in January 2001, several years after the enactment of IIRIRA. It is absurd to believe that Calderon-Terrazas considered the immigration consequences of his actions prior to engaging in his criminal

activity.  Likewise, if Calderon-Terrazas had truly considered the immigration consequences as strategy in his criminal proceedings, he would have been alerted to the sweeping statutory changes brought about by IIRIRA and would have been cautious in relying on decisions rendered prior to its enactment.

"[T]he United States has always been a nation of immigrants; it is one of our greatest strengths.  But aliens arriving at our shores must understand that residency in the United States is a *privilege*, not a *right*.  For those aliens ... who engage in ... criminal acts during their stay here, this country will not offer its embrace."  Matter of Jean, 23 I&N Dec. 373, 384 (A.G. 2002).  Having no **right** to remain in this country, Calderon-Terrazas should have been aware of the possibility that his **privilege** to reside here legally was in jeopardy at the time he was arrested for his criminal offense.  To believe otherwise is unconscionable.

Until the Board has rendered its decision, there is no administratively final decision.  As an ongoing application, the alien runs the risk that, during the pendency of the appeal, the law may change, perhaps in an unfavorable way.  The law in this area is always evolving and what may be the law today may not be the law tomorrow.  A case decided according to Board precedent yesterday may be decided differently today based on changes in the law, either statutorily or through court decisions.  Calderon-Terrazas has been convicted of a criminal offense.  The crime for which he was

convicted - sexual assault of a child - is a felony in the State of Texas.    The Petitioner has been convicted of an aggravated felony and, consequently, ineligible for cancellation of removal.

### III. THE RULING ON THE NINTH CIRCUIT COURT IN LUJAN-ARMENDARIZ v. INS SHOULD NOT BE APPLIED IN THIS CASE AS IT HAS NO EFFECT ON CALDERON-TERRAZAS'S CONVICTION.

In Lujan-Armandariz v INS, 222 F.3d 728 (9th Cir. 2000), the Ninth Circuit consolidated the cases of Mauro Roldan-Santoyo[4] and Lujan-Armendariz to determine whether the definition of "conviction" enacted in §101(a)(48)(A) of the Act, 8 U.S.C. §1101(a)(48)(A), repealed the Federal First Time Offender Act[5], and whether such treatment should be extended to the FFOA's state counterparts.    The first-time drug possession convictions of Roldan and Lujan had been set aside pursuant to state rehabilitative statutes.    Finding that their convictions satisfied the requirements of the FFOA, the Ninth Circuit concluded that the

---

[4]  Roldan's appeal to the Board resulted in Matter of Roldan-Santoyo, Int. Dec. 3377 (BIA 1999).

[5]  The FFOA applies to first-time federal drug offenders guilty of simple possession, who have the charges against them dismissed after they plead guilty and serve their term of probation.  The FFOA provides that after such a charge is dismissed, it "shall not be considered a conviction for the purpose of disqualification or disability imposed by law upon conviction of a crime, or for any purpose."  18 U.S.C. §3607(b).  Further, the person shall be restored, "in the contemplation of the law to the status he

convictions of Roldan and Lujan were not "convictions" for
immigration purposes and they rejected the interpretation of
§101(a)(48)(A) of the Act, 8 U.S.C. §1101(a)(48)(A) adopted by the
Board in <u>Matter of Roldan-Santoyo</u>, Int. Dec. 3377.

In reaching this conclusion, the Ninth Circuit decided that
the Board had, in effect, wrongly construed the definition of
"conviction" to be an implied repealer of the FFOA, when it was in
fact a "minor exception" to that definition.  <u>Id</u>. at 744-45.  The
panel then concluded that since the FFOA was an exception to the
definition of "conviction," it would offend equal protection under
the rule established by it in <u>Garberding v. INS</u>, 30 F.3d 1187 (9th
Cir. 1994) not to extend FFOA treatment to comparable state
offenders like Lujan and Roldan.  Accordingly, the panel held Lujan
and Roldan could not be treated as having a "conviction" for
immigration purposes.  <u>Lujan</u>, 222 F.3d at 744-45, 749.[6]

The Ninth Circuit's decision in <u>Lujan</u> conflicts with the plain
language of §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48), which,
as shown and found by the Fifth Circuit in <u>Moosa v. INS</u>, 171 F.3d
at 1005, is clear and unambiguous and permits no exceptions for
rehabilitative state statutes.  It should be noted that even the

---

occupied before such arrest or institution of criminal
proceedings."  <u>Id</u>., §3607(c).

[6]  It bears mentioning that in <u>Garberding</u>, the Ninth Circuit held
that the FFOA need only be given effect to aliens who received
lenient treatment under state programs.  Here, because Congress has

24

Lujan majority noted that its decision did not effect that the

conviction definition has on state expungements under state

rehabilitation laws in general. Lujan, 222 F.3d at 742.

   The analysis applied by the panel in Lujan reached the issue

of whether the conviction definition repeals the First Offender Act

in whole or in part. The Court concluded that it does not and that

the FFOA trumps the clear language of §101(a)(48) of the Act, 8

U.S.C. §1101(a)(48). Lujan, 222 F.3d at 742. However, the

conclusion is contrary to the longstanding rule of statutory

construction that a general statute will not govern if a specific

statute covers the case. Resolution Trust Corp v Seale, 13 F.3d

850, 854 (5th Cir. 1994) citing Green v Bock Laundry Mach. Co., 490

U.S. 504, 524 (1989); Morton v Mancari, 417 U.S. 535, 550-551

(1974). Applying these principles sub judice, §101(a)(48)(A) of the

Act, 8 U.S.C. §1101(a)(48)(A), which specifically deals with the

effects of rehabilitative expungements for immigration purposes,

takes precedence over the FFOA.

   To the extent that it has addressed the issue, the Fifth

Circuit has agreed with the Board in finding that the definition of

"conviction" encompasses Texas deferred adjudications. See Moosa v

INS, 171 F.3d 994, 1005 (holding that Texas deferred adjudication

was a "conviction" for purposes of determining an alien's

---

expressly barred the use of deferred adjudication, Calderon-
Terrazas' treatment should not be given effect.

eligibility for permanent residency pursuant to § 245A of the Act, 8 U.S.C. §1255a); <u>Garnica-Vasquez v Reno</u>, 210 F.3d 558 (5th Cir. 2000)(a habeas case of a petitioner with a deferred adjudication of guilty for indecency with a child in which the Court cited <u>Moosa</u> and noted that a deferred adjudication is a conviction for immigration purposes).

Additionally, two other courts of appeals have construed §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48) differently than the <u>Lujan</u> majority as to the clarity and meaning of the statute's language as applied to rehabilitative expungements. <u>See Herrera-Inirio v INS</u>, 208 F.3d 299 (1st Cir. 2000)(holding expunged crime of domestic violence is still a conviction for immigration purposes); <u>Griffiths v INS</u>, 243 F.3d 45 (1st Cir. 2001)(First Circuit defers to Board's interpretation of "conviction" where petitioner was subject to a "guilty filed" disposition as a result of a firearm violation under Massachusetts law) <u>United States v Campbell</u>, 167 F.3d 94 (2d Cir. 1999)(Texas drug conviction vacated upon completion of probation is a "conviction" within the meaning of new statute as incorporated by federal sentencing guidelines).

As argued, §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48), makes "guilt" the dispositive factor in whether there is a "conviction" for immigration purposes - not what type of rehabilitative treatment a criminal received, and Congress intended to prevent aliens who were clearly guilty of criminal conduct from

using a variety of rehabilitative procedures to escape the immigration consequences of their crimes.

With the Board free to reconsider the wisdom of its interpretation on a continuing basis, the Board was justified in taking occasion to re-evaluate its policy regarding state expungements of convictions for at least two reasons. First, Congress, in enacting §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48), provided a uniform definition of a "conviction" - a definition which had previously been provided only by the Board's interpretation. Second, it was appropriate for the Board to interpret the definition of a "conviction" and its policy regarding expungements in light of the decisions of the Fifth Circuit regarding the role of equal protection in the expungement context. As such, this Court should follow the Board and find that under §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48), Calderon-Terrazas stands convicted for immigration purposes. The plain language of the statute provides that Calderon-Terrazas is removable by reason of having committed criminal offenses covered by §237(a)(2)(A)(iii) of the Act, 8 U.S.C. §1227(a)(2)(A)(iii).

Calderon-Terrazas's position that just because the Ninth Circuit reached a result that was favorable to the aliens in Lujan-Armendariz, he should be afforded the same consideration regardless of the fact that he falls within the jurisdiction of the Fifth Circuit is also unreasonable. Such a broad statement has been

27

rejected by both the Eleventh Circuit Court of Appeals ("Eleventh Circuit") and the Eighth Circuit Court of Appeals ("Eighth Circuit"), albeit in the context of drug convictions and the Federal First Offenders Act ("FFOA").  Fernandez-Bernal v. Attorney General, 257 F.3d 1304 (11th Cir. 2001); Vasquez-Velezmoro v. INS, 281 F.3d 693 (8th Cir. 2002).

The Eleventh Circuit in Fernandez-Bernal found that it was not a violation of equal protection to treat an alien convicted under a state rehabilitative statute differently than an alien convicted under FFOA if the term of probation was different.  "[T]reating aliens differently based on the nature of the sentence they receive" does not violate equal protection.  Fernandez-Bernal at 1317.  "[N]othing requires that aliens whose sentences would not have been expunged under the FFOA be given better treatment under immigration laws merely because they received their sentences and expungements under state law."  Id. at 1317, n.12.

Echoing the Eleventh Circuit's findings, the Eighth Circuit found that although a state defendant and a defendant under FFOA may be "similarly situated (in that the intent of the judge was to provide them with the opportunity to have their convictions expunged), we still see a rational basis for treating differently state and federal convictions that are expunged."  Vasquez-Velezmoro at 698.  "There are conceivable states of facts to

explain treating differently aliens with state expunged convictions
and aliens with FFOA expunged convictions."  Id.

The term of Calderon-Terrazas's probation was six years -
significantly longer than the one-year-or-less sentence of
probation that defendants need to be eligible for FFOA relief.
Since Calderon-Terrazas's sentence is different, treating him
differently here is not arbitrary or unreasonable.

### IV.  THIS COURT SHOULD DENY PETITIONER'S REQUEST FOR DECLARATION AND INJUNCTIVE RELIEF BECAUSE CALDERON-TERRAZAS' CLAIM FOR RELIEF HAS BEEN "MEANINGFULLY HEARD".

Calderon-Terrazas further seeks declaratory and injunctive
relief in this matter.  His request is based on his claim that his
case was not "meaningfully heard".  Such a claim is without merit.

Immigration regulations allow for the Chairman of the Board of
Immigration Appeals to designate permanent board members to affirm
decisions of immigration judges without opinion.  8 C.F.R.
§3.1(a)(7)(i).

> The single Board Member to whom a case is
> assigned may affirm the decision of the ...
> Immigration Judge, without opinion, if the
> Board Member determines that the result reached
> in the decision under review was correct; that
> any errors in the decision under review were
> harmless or nonmaterial; and that
>
> (A) the issue on appeal is squarely
> controlled by existing Board or federal court
> precedent and does not involve the application
> of precedent to a novel fact situation; ... .

29

8 C.F.R. §3.1(a)(7)(ii)(A). As set forth above, the factual and legal issues in this case fall directly within established Board and Fifth Circuit precedent law and do not require a more detailed explanation.

The Board complied with established regulations in finding that this case did not warrant further explanation. Consequently, the Petitioner's request for declaratory and injunctive relief should be denied as lacking merit.

### CONCLUSION

Calderon-Terrazas has been "convicted" of a criminal offense as that term is defined by the Act and interpreted by the Board and the Fifth Circuit. Additionally, Calderon-Terrazas has been convicted of an "aggravated felony" as that term is defined by the Act and interpreted by the Fifth Circuit and, consequently is ineligible for relief from removal. For the foregoing reasons, the Court should dismiss the petition for writ of habeas corpus.

Respectfully submitted,

MICHAEL T. SHELBY
United States Attorney
Southern District of Texas

LISA M. PUTNAM
Special Assistant U.S. Attorney
P.O. Box 1711
Harlingen, Texas 78551
Tel: (956) 389-7051
Georgia Bar No. 590315
September 18 , 2002        Federal Bar No. 23937

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Respondents' Return and Motion to Dismiss the Petition for Writ of Habeas Corpus was mailed via first class mail, postage prepaid to:

> Jodi Goodwin, Esquire
> 1322 E. Tyler Ave.
> Harlingen, TX  78550

on this _18th_ day of September, 2002.



LISA M. PUTNAM
Special Assistant United States Attorney



```
TRN:
FBI NO.: NONE
DPS NO.: NONE
D.O.B. : 02/24/77
DATE OF ARREST: NONE
ARRESTING AGENCY: NONE
BOND: 10,000⁰⁰        By: ℳ
```

NO. 00-CR-603-H

THE STATE OF TEXAS VS. OSWALDO CALDERON

```
CHARGE:    COUNT 1 & 2: SEXUAL ASSAULT OF A CHILD
STATUTE:   TEXAS PENAL CODE SECTION 22.011
DEGREE:    SECOND
```

FILE COPY

COURT: _____

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

The duly organized Grand Jury of Nueces County, Texas, presents in the District Court of Nueces County, Texas, that

COUNT 1

OSWALDO CALDERON, defendant,

on or about December 11, 1999, in Nueces County, Texas, did then and there by inserting his finger, intentionally and knowingly cause the penetration of the sexual organ of Victoria Martinez, a female child younger than 17 years of age and not the spouse of the defendant

COUNT 2

OSWALDO CALDERON, defendant,

on or about December 11, 1999, in Nueces County, Texas, did then and there by inserting his sexual organ, intentionally and knowingly cause the penetration of the sexual organ of Victoria Martinez, a female child younger than 17 years of age and not the spouse of the defendant

against the peace and dignity of the State,

_____
FOREMAN OF THE GRAND JURY



STATE OF TEXAS
COUNTY OF NUECES

I, OSCAR SOLIZ, DISTRICT CLERK OF NUECES COUNTY Texas, do hereby certify that the foregoing is a true and correct copy of the original record, now in my lawful custody and possession, as appears of record filed _February 24, 2001_ ........ in my office. Witness my official hand and seal of office, this _30th of November 2001_

OSCAR SOLIZ, DISTRICT CLERK
Nueces County, Texas

_____
Deputy

NO. 00 CR 0603 H

THE STATE OF TEXAS

VS.

OSWALDO CALDERON

\* \* \* \* \* \* \* \* \*

IN THE 347TH DISTRICT COURT
NUECES COUNTY, TEXAS

JUDGMENT ON PLEA OF GUILTY OR NOLO CONTENDERE TO THE COURT
DEFERRED ADJUDICATION

Defendant was charged by indictment with the offense of COUNTS 1-2: SEXUAL ASSAULT OF A CHILD. This case was called for trial on DECEMBER 20, 2000. The parties appeared and announced ready for trial. The following attorneys appeared: for the State, RETHA CABLE; for the defendant VINCENT GONZALEZ. The defendant was personally present with defendant's counsel during the trial.

The defendant stood charged with the offense of COUNTS 1-2: SEXUAL ASSAULT OF A CHILD and waived trial by jury. The Court approved the waiver after finding that all of the requirements of Article 1.13, Texas Code of Criminal Procedure, had been met.

Defendant waived reading of the indictment and entered a plea of guilty. The Court inquired as to the existence of any plea bargaining agreement. The parties informed the Court that one existed and advised the Court of its terms. Before making any finding on the plea the Court informed the defendant that it would follow the agreement.

Before accepting the plea, the defendant was advised by the Court of the elements of the offense, of the applicable range of punishment, and further admonished as required by Article 26.13, Texas Code of Criminal Procedure. The defendant was further advised that if the defendant was not a citizen of the United States of America, a plea of guilty or nolo contendere for the offense charged may result in deportation, the exclusion from admission to this country, or the denial of naturalization under federal law.

Before accepting the plea, the Court found that the defendant was mentally competent. The Court found that the plea was being made knowingly, freely, and voluntarily. Based on representations by defendant and defendant's counsel, the Court finds that defendant has received effective assistance of counsel.

Evidence was submitted on the issues of guilt and punishment.

24 860

The Court accepts the defendant's plea of guilty, and based on the evidence submitted, the Court finds beyond a reasonable doubt that the evidence substantiates the defendant's guilt, but further finds that the best interest of society and the defendant will be served by deferring further proceedings without an adjudication of guilt and by placing the defendant on community supervision for a period of SIX YEARS and by assessing a fine of $-0-. The State of Texas shall have and recover of the Defendant all costs for this prosecution in the amount of $462.25 for which let execution issue.

The Court further finds beyond a reasonable doubt that the defendant, as a result of defendant's criminal conduct, caused monetary damages in this case in the amount of $-0- to   .

The Court finds beyond a reasonable doubt that the offense was committed on DECEMBER 11, 1999.

In accordance with these findings, it is ordered, adjudged, and decreed that further proceedings in the cause are deferred and the defendant is placed on community supervision for a period of SIX YEARS. The community supervision term and the terms and conditions of community supervision are set out in a supplementary order to this judgment. The clerk of the court shall furnish a copy of the terms and conditions to the probationer and shall note the date of delivery on the docket.

Signed and entered on this date: JANUARY ___9___, 2001.


_____
JUDGE PRESIDING

24 861

CONDITIONS OF COMMUNITY SUPERVISION

XXX DEFERRED ADJUDICATION                                    ___ STATE JAIL FELONY
___ FELONY PROBATION-SUSPENDED SENTENCE                      ___ FELONY REDUCED MISD

THE STATE OF TEXAS          NO: 00-CR-0603-H        IN THE 347 TH DISTRICT COURT
                                                    OF NUECES COUNTY, TEXAS
vs. Oswaldo Calderon        OFFENSE: Sexual Assit of a child

C.C. ORDER PLACING YOU ON COMMUNITY SUPERVISION: On the 20th day of December, 2000, you we:
placed on Community Supervision by the HONORABLE JUDGE R. Garcia for a period of Six (6) years/month
with the following terms and conditions.

( )    ORDER ___ MODIFYING ___ ADJUDICATING ___ REINSTATING terms and conditions of Community Supervisio

( ) Your conditions are revised on this ___ day of ___ ,20___ as indicated below.
    and your Community Supervision term is to terminate on ___
( ) Effective ___ your Community Supervision term is extended for ___ years/months, terminating on ___

(A) C.C. COMMIT NO OFFENSE AGAINST THE LAWS of this State or of any other State or of the United States;
(B) C.C. REPORT TO THE CSCD OFFICER AS DIRECTED and at least once each month while you are under supervision;
(C) C.C. REMAIN WITHIN NUECES COUNTY, TEXAS unless permitted to depart by the Court or Supervision Officer;
(D) C.C. PERMIT the Supervision Officer to VISIT YOU AT YOUR HOME, at your WORK, or elsewhere;
(E) C.C. REPORT any CHANGE OF RESIDENCE, JOB, or job status to the Supervision Officer within 24 hours;
(F) C.C. WORK faithfully at suitable employment as far as possible;
(G) C.C. AVOID PERSONS or PLACES of disreputable or harmful character;
(H) C.C. DO NOT USE alcoholic beverages, narcotics or any other controlled substances; SUBMIT TO URINALYSIS as directed.
(I) C.C. SUPPORT your dependents (current and future);
(J) C.C. PAY the following IN CASH, CASHIER'S CHECK, OR MONEY ORDER in one or several sums payable through the Nueces
County CSCD as determined by the Court:

(1) C.C. $462.25 COURT COSTS:        1 at the rate of $25.00 per month beginning 1-20-01 and due by 6-20-02
(2) ___ $___ FINE:                   at the rate of $___ per month beginning ___ and due by ___
___ $___ RESTITUTION:                at the rate of $___ per month beginning ___ and due by ___
(3) C.C. $300.00 ATTORNEY FEE:       2 at the rate of $25.00 per month beginning 7-20-02 and due by 6-20-03
(4) C.C. $50.00 CRIME STOPPERS FEE:  due on or before 7-31-03
(6) C.C. $40.00 MONTHLY SUPERVISION FEE:  beginning 1-20-01 and each and every month thereafter while under supervisio
(7) C.C. $25.00 PSI FEE:             due on or before 8-31-03
(8) C.C. $5.00 SEX OFFENDERS FEE:    at the rate of $5.00 per month beginning 1-20-01 and each and every month thereafte
                                     while under supervision.
(9) ___ $___ BOND FEE:               at the rate of $___ per month beginning ___ and due by ___
(10) ___ $___ VICTIMS COMPENSATION FUND:  at the rate of $___ per month beginning ___ and due by ___
(11) ___ $___ CHILD VICTIMS COMPENSATION FUND:  due on or before ___
(12) ___ $___ ABUSED CHILDREN'S FUND:  due on or before ___
(13) ___ $___ ADDITIONAL FEES:       at the rate of $___ per month beginning ___ and due by ___
(14) ___ $___ ADDITIONAL FEES:       at the rate of $___ per month beginning ___ and due by ___
NOTE: Attorney fee to paid to Nueces Co. for payment of Atty Terry Shamsie. Mr. Shamsie wa
Court appointed to A at one time.
(K) C.C. YOU ARE ORDERED TO ATTEND, PARTICIPATE, PAY FOR, AND COMPLETE IN A SATISFACTORY MANNER:
(1) C.C. INTENSIVE SUPERVISION Program beginning December 20, 2000 as directed.
(2) C.C. EVALUATION AND COUNSELING Program for SUBSTANCE ABUSE with Treatment Alternatives to Incarceration (TAIP).
(3) ___ EVALUATION AND COUNSELING Program for SUBSTANCE ABUSE with ___
(4) ___ SUBSTANCE ABUSE CHEMICAL THERAPY Program as follows: ___ Flagyl/Antabuse ___ Trexan ___ Methadone as directe
(5) ___ TWELVE-STEP SUPPORT GROUP MEETINGS with ___ as directe
(6) ___ ADULT LEARNING EDUCATION classes or GED classes and complete by ___
(7) ___ CONTINUE YOUR EDUCATION after completing your GED.
(8) ___ DWI SCHOOL Program and VICTIM IMPACT Program as directed.
(9) ___ TEXAS DRUG OFFENDER EDUCATION Program as directed.
(10) ___ DWI REPEAT OFFENDER Program (DROP) as directed.
(11) ___ ANGER MANAGEMENT Program with ___ as directe
(12) ___ ANGER-RAGE, INSIGHT & RESOLUTION Program as directed.
(13) ___ THEFT REHABILITATION Program as directed.
(14) ___ MONEY MANAGEMENT Program as directed.
(15) ___ PARENTING CLASSES as directed.
(16) ___ LIFE SKILLS TRAINING Program as directed.
(17) ___ MENTAL HEALTH TREATMENT OR COUNSELING (inpatient or outpatient) as directed.
(18) ___ MENTAL HEALTH SERVICES as directed by the CSCD Specialized Mental Health Officer.
(19) ___ Other Educational/Counseling Program as directed: ___
(20) C.C. FELONY VICTIM IMPACT PANEL Program within six (6) months of date of probation as directed.
(21) ___ JOB READINESS PROGRAM within six (6) months of date of referral.

24 86

THE FOLLOWING RESTRICTIONS ARE MADE A PART OF YOUR COMMUNITY SUPERVISION:

(1) _____ Spend _____ consecutive days/nights/weekends in NUECES COUNTY JAIL beginning_____
(S.P.U.R.S.: ___ YES ___ NO) (WORK RELEASE: ___ YES ___ NO)

(2) _____ Spend _____ consecutive days in a STATE JAIL FACILITY beginning_____

(3) _____ Install a DEEP LUNG BREATH ANALYSIS MECHANISM in your automobile by_____

(4) _____ Do not operate a vehicle WITHOUT A VALID D.L. Your Drivers License is SUSPENDED for a period of _____ months, beginning_____

(5) _____ Complete _____ days of ELECTRONICALLY MONITORED HOUSE ARREST beginning_____

(6) O.C. Complete 200 hours of COMMUNITY SERVICE RESTITUTION at the rate of 16 hours/month beginning January 2001 and to be completed by February 1, 2002

(7) _____ Observe a CURFEW from 9:00 p.m. to 6:00 a.m. for _____ months beginning_____

(8) O.C. Do not join or associate with any STREET GANGS; do not exhibit any gang indicia or paraphernalia.

(9) O.C. Do not ASSOCIATE OR HAVE CONTACT WITH Victoria Martinez or their family.

(10) O.C. Do not enter or patron any LIQUOR STORES. Do not enter or patron any GAMBLING ESTABLISHMENTS.

(11) O.C. Permit a Law Enforcement Agency to search your PERSON, VEHICLE, RESIDENCE or WORK SITE for ILLEGAL DRUGS, or WEAPONS to determine your compliance with supervision.

(12) O.C. Possess no FIREARMS or AMMUNITION while under Community Supervision.

(13) O.C. Carry all your conditions of Community Supervision UPON YOUR PERSON AT ALL TIMES.

(14) _____ Abstain from the USE OF ANY TOBACCO PRODUCTS while under Community Supervision.

(15) O.C. Report any NEW AND SUBSEQUENT ARREST within 48 hours.

(16) _____ Submit to a blood test as directed through the Texas Department of Public Safety in order to create your DNA RECORD.

O.C. OTHER CONDITIONS OF YOUR COMMUNITY SUPERVISION:

(1) O.C. Register with TEXAS WORKFORCE COMMISSION for job search assistance as directed. If unemployed

(2) _____ Register with TEXAS REHABILITATION COMMISSION for job readiness assistance as directed.

(3) _____ Pay a TAX of $_____ on any drug(s) possessed, consumed, or seized as a result of this offense.

(4) _____ Pay a FEE of $_____ for Breath Test Analysis as a result of this offense.

(5) _____ Pay a FEE of $_____ for Video Tape expense as a result of this offense.

(6) _____ Appear in person, in the 347th/117th District Court on _____, 19___, at _____ p.m. for a 30-DAY Orientation Hearing.

(7) _____ Appear in person, in the 347th/117th District Court on _____, 19___, at _____ p.m. for a 90-DAY Orientation Hearing.

(8) _____ Appear in person, in the 28th District Court on _____, 19___, at 8:30 a.m. for a 120-DAY REVIEW Hearing.

(9) _____ Sign an order WITHHOLDING WAGES FROM YOUR PAYCHECK in order to pay for Court-ordered fees.

(10) _____ FURNISH CSCD WITH A COPY of your Federal Income Tax return by May 15th of each year and a copy of your W-2 Form (or similar tax document) by February 15th of each year.

(11) _____ If restitution is owed, SUBMIT ENTIRE TAX REFUND to the CSCD in payment for restitution; if married, submit one-half of same.

(12) _____ If divorced (with children), furnish CSCD a copy of your DIVORCE DECREE and PAY YOUR CHILD SUPPORT as court-ordered.

(13) _____ Submit yourself to and participate with _____ Residential Facility beginning _____ and obey all rules and regulations of same.

========================( ) FELONY PROBATION-SUSPENDED SENTENCE========================
YOU ARE FURTHER ADVISED THAT BECAUSE YOU HAVE BEEN CONVICTED OF A FELONY OFFENSE AND PLACED ON COMMUNITY SUPERVISION, DURING THE PERIOD IN WHICH YOU WILL BE SERVING YOUR COMMUNITY SUPERVISION SENTENCE, IN ACCORDANCE WITH STATE LAWS, (1) YOU MAY NOT VOTE, (2) YOU MAY NOT SERVE ON A JURY, AND (3) YOU MAY NOT HOLD PUBLIC OFFICE.
AND, BECAUSE OF YOUR CONVICTION, YOU ARE FURTHER ADVISED THAT UNDER THE FEDERAL GUN CONTROL ACT OF 1968, IT IS A VIOLATION OF FEDERAL LAW FOR YOU TO CARRY, PURCHASE, RECEIVE, OR POSSESS A FIREARM OR EXPLOSIVE.

========================( ✓ ) DEFERRED ADJUDICATION========================
In accordance with the authority conferred by the Adult Probation Law of the State of Texas the 347 TH Judicial District Court has determined the terms and conditions of your Community Supervision. The Court has the authority to alter or modify these terms or conditions at any time during the period of your Community Supervision. The Court also has the authority to revoke your Community Supervision at any time should you violate any of these terms or conditions as advised and set out above.
The Court has placed you on Community Supervision believing that if you sincerely try to abide with all of the terms and conditions as set out above, then you will successfully complete the Community Supervision, all of your civil rights will be restored, and you will prove to be an asset to your community.
========================================================================

## STATEMENT OF OFFENDER

On the above date, I was granted a community supervision sentence in the above styled and numbered cause. The conditions of my community supervision in this same cause as listed herein have been explained to me by the Community Supervision Officer whose signature appears below. I do verify by my signature below that I fully understand all of the terms and conditions of my community supervision.

_____
OFFENDER

_____
COMMUNITY SUPERVISION OFFICER
or Probation Assistant
ID#: 1010145

PRESIDING JUDGE
DATE SIGNED 12-22-2000

OSCAR SOLIZ, DISTRICT CLERK
Leonor Carbin, Deputy

863

**(N)** _O.C._ SEX OFFENDER SPECIAL CONDITIONS:

**(1)** _O.C._ Submit to ACQUIRED IMMUNE DEFICIENCY SYNDROME (AIDS) testing within thirty (30) days from the date of this Order

**(2)** _O.C._ SUBMIT TO A POLYGRAPH EXAMINATION as directed.

**(3)** _O.C._ Submit to a blood test as directed through the Texas Department of Public Safety in order to create your DNA RECORD.

**(4)** _O.C._ DO NOT RESIDE within __Five (5)__ mile(s) of the victim. You will neither contact nor attempt to contact Victoria Mari nor any of his/her family members by phone, mail, or in person; should you find yourself inadvertently in contact with said individual you will immediately leave and not threaten, assault, nor verbally abuse him/her.

**(5)** _O.C._ HAVE NO CONTACT with the victim or any minor children (unless under the supervision of an adult who has been informed of the instant offense and approved by the Supervision Officer; you will NOT RESIDE IN A HOUSEHOLD WHERE THE VICTIM OR OTHER MINOR CHILDREN LIVE (unless permission is granted by the Court-approved sex offender therapist and/or the Supervision Officer); you will NOT VISIT ANY AREAS near schools, day care centers, parks, or other places WHERE CHILDREN CONGREGATE; you will NOT OBTAIN EMPLOYMENT or PARTICIPATE IN ANY VOLUNTEER ACTIVITY during which there is contact with minors under the age of eighteen.

**(6)** _O.C._ BE FINANCIALLY RESPONSIBLE FOR THE COSTS of any mental health treatment needed and undertaken by the victim as a result of this offense.

**(7)** _O.C._ REGISTER YOURSELF with the Sex Crime Unit of the Corpus Christi Police Department as a sex offender on supervision status within seven (7) days of this judgement. Should you request to relocate within your present jurisdiction or to any other jurisdiction in the United States and be given approval for same by the Court via Nueces County CSCD, you will register yourself with the Sex Crime Unit of the local law enforcement agency of said jurisdiction within seven (7) days of any relocation. You will provide the Nueces County CSCD with verification within ten (10) days of self report.

**(8)** _O.C._ SUBMIT TO, PARTICIPATE IN, PAY FOR, AND SATISFACTORILY COMPLETE the incest/sexual abuse counseling program with:
_____ a) MHMR, SEXUAL PERPETRATORS GROUP.
_____ b) FAMILY COUNSELING SERVICES, SEXUAL PERPETRATORS GROUP.
_____ c) SEXUAL PERPETRATOR'S TREATMENT PROGRAM (STPT).
_____ d) SYSTEMATIC TREATMENT OF PERPETRATORS (STOP) PROGRAM
_____ e) AFTERCARE PROGRAM with PAPPA (Parents Anonymous Prison/Probation Population Advocacy)
as directed by the Supervision Officer and provide verification of same.

**(9)** _O.C._ Do not possess or use a computer with access to any "on-line computer service" at any location (including employment) without the prior written approval of the Court. This includes any Internet service provider, bulletin board system, or any other public or private computer network. Do not possess or use any data encryption technique or program.

**(10)** _O.C._ You will (a) consent to your Supervision Officer (or their service representative) conducting periodic unannounced examinations of your computer(s) equipment which may include retrieval and copying of all memory from your computer(s) and any internal or external peripherals to ensure compliance with this condition and/or removal of such equipment for the purpose of conducting a more thorough inspection; and (b) consent at the direction of your Supervision Officer to having installed on your computer(s), at your expense, any hardware or software systems to monitor your computer use.

**(O)** SPECIAL CONDITIONS FOR CCF RESIDENTIAL FACILITIES:

**(1)** _____ In lieu of incarceration in the Institutional Division of the Texas Department of Criminal Justice, you will submit to confinement in Nueces County Jail (NCJ) beginning _____ and remain therein until transported to the HOMER SALINAS RESIDENTIAL FACILITY located on M Road and Richardson Road in Edinburg, Texas for a period not to exceed six (6) months. You will remain committed to the Center, cooperate fully with the program, and abide by all program rules until released.

**(P)** SPECIAL CONDITIONS FOR SATF RESIDENTIAL FACILITIES:

**(1)** _____ In lieu of incarceration, you will participate in a CSCD-based residential program: the SUBSTANCE ABUSE TREATMENT FACILITY (SATF) in Corpus Christi, Texas, beginning upon availability of space for a period of not less than 180 days nor more than two years. While there, you must cooperate and comply with all rules, regulations, and contracts and remain until released by the Court in writing. The CSCD is authorized to transfer you between existing programs for level advancement, education or disciplinary purposes. You will pay $13.50/day for room and board once employable or employed full-time.

**(2)** _____ You will submit to confinement in Nueces County Jail (NCJ) beginning five (5) days prior to admission date into the facility and remain therein until transported to the residential facility. While at the residential facility, you will submit to random urinalysis/breath analysis; Flagyl/Antabuse Therapy under a licensed physician at your expense; complete 160 hours of Community Service Restitution hours; attend and participate in a) regular meetings in a Twelve-Step Support Group Program (AA/NA); b) Literacy/GED classes; c) Employment Readiness classes; d) substance abuse education classes; e) Life Skills classes; f) Aggression-Control Therapy classes.

**(Q)** SPECIAL CONDITIONS FOR THE PROJECT SPOTLIGHT PROGRAM:

**(1)** _____ In lieu of incarceration, you will participate in the Nueces County CSCD-based PROJECT SPOTLIGHT PROGRAM for a term of not less than six (6) months nor more than nine (9) months. You will cooperate and comply with all the rules, regulations, and contracts of the PROJECT SPOTLIGHT PROGRAM.

**(2)** _____ You will observe a CURFEW from 9:00 p.m. to 6:00 a.m. for _____ months beginning _____.

**(3)** _____ While in the SPOTLIGHT PROGRAM you will submit to random urinalysis/breath analysis; Antabuse Therapy under a licensed physician at your expense; attend and satisfactorily participate in: a) Aggression Control Therapy classes b) Employment Readiness classes, c) Life Skills classes d) substance abuse evaluation/intervention/education classes.

**(4)** _____ You will appear in person for Probation Reviews to be scheduled every 90 days commencing on _____.

**(5)** _____ You will permit a Law Enforcement Agency TO SEARCH YOUR PERSON, VEHICLE, RESIDENCE or WORK SITE FOR ILLEGAL DRUGS or WEAPONS to determine compliance with supervision.

**(6)** _____ Upon successful completion of the PROJECT SPOTLIGHT PROGRAM you will participate in an INTENSIVE SUPERVISION CASELOAD, and REPORT WEEKLY to the CSCD intensive officer until instructed otherwise.

24 864

DEFENDANT: Oswaldo Idenon    CAUSE NO: C. 02-0603-H

**(Q)    SPECIAL CONDITIONS FOR SAFPF RESIDENTIAL FACILITIES**

(1)_____ You will participate in the Substance Abuse Felony Punishment Facility (SAFPF) beginning upon availability of space, f an indeterminate term of not less than nine (9) months nor more than one (1) year, and while there, you will comply with all the rul regulations, and treatment programs, remaining until released by the Court. You are to remain in the Nueces County Jail (NC beginning _____ until transported to the SAFPF by the Nueces County Sheriff's Department.

(2)_____ Upon release, you will return to the supervision of the Supervision Officer of this Court by the Sheriff's Department.Upon relea from the SAFPF, you will submit to the Coastal Bend Alcohol and Drug Rehabilitation Center (or any other Texas Commission o Alcohol and Drug Abuse licensed and funded Transitional Treatment Center coordinated by the SAFPF Transition Coordinator), f the purpose of residential substance abuse aftercare, cooperate fully with all treatment program requirements, and obey all rules a regulations, remaining therein until released by the Court.

(3)_____ Upon release from the Transitional Treatment Center, you will submit to the Treatment Associates Incorporated (or any other Tex Commission on Alcohol and Drug Abuse licensed and funded after-care program) for the purpose of outpatient substance abuse afterca cooperate fully with all treatment program requirements, obey all rules and regulations of the Center, remaining therein until releas by the Center.

(4)_____ You will avoid the use of any narcotic pain killers (only non-narcotic prescriptions, or over-the-counter drugs may be used). Yo must provide the SAFPF facility a copy of all prescriptions and/or ingredients of over-the-counter medications that are used.

**(R)    SPECIAL CONDITIONS FOR RITE FACILITY**

(1)_____ You are to satisfactorily participate in a screening assessment for substance abuse and submit to any counseling, urinalysis, and/ any diversionary programs outpatient or inpatient as determined within the Nueces County CSCD TREATMENT ALTERNATIVE T INCARCERATION PROGRAM (TAIP).

(2)_____ You will submit to confinement in Nueces County Jail for a minimum of 5 days and remain therein until transported to the Residential Intensive TAIP Experience (R.I.T.E.) Program Facility once space becomes available at the facility.

(3)_____ In lieu of incarceration, you will remain under custodial supervision in a Community Corrections Facility and participate in a CSC based Community Corrections Facility program pursuant to Article 42.12 Section 11a) 12 of the Texas Code of Criminal Procedure wit: the Residential Intensive TAIP Experience (R.I.T.E.) Program in Corpus Christi, Nueces County, Texas, beginning upon availabil of space for a period of not less than 56 days nor more than 120 days. While there, you must cooperate and obey all rules, regulatio and contracts of such facility, and remain until released by the Court in writing. While at the residential facility, you will: abstain fro the consumption of alcohol and controlled substances; submit to random urinalysis/breath analysis; complete 20 hours of Communi Service Restitution; attend and participate in a) a Twelve Step Support Group Program (AA/NA); b) substance abuse education clas and groups; c) individual counseling; attend and participate in Life Skills classes.

**(S)    SPECIAL CONDITIONS FOR HOPE FACILITY**

(1)_____ In lieu of incarceration, you will remain under custodial supervision in a Community Corrections Facility and participate in a CSC based Community Correction Facility program pursuant to Article 42.12 Section 11(a)(12) of the Texas Code of Criminal Procedure, T WIT: the HOPE Residential Program in Corpus Christi, Texas, beginning upon availability of space for a period of not less than 1 days nor more than (1) year. While there, you must cooperate and obey all rules, regulations, and contracts of such facility and rem until satisfactorily released by the Court in writing. While at the residential facility you will: submit to random urinalysis/brea analysis; complete 80 hours of Community Service Restitution; attend and participate in a) a Twelve-Step Support Group Progr (AA/NA); b) in Literacy/GED classes and groups; c) Life Skills classes; d) Individual Counseling and any other therapeutic compone of the program.

(2)_____ You will submit to confinement in Nueces County Jail (NCJ) beginning five (5) days prior to admission into the facility and rem therein until transported to the residential facility.

====================================================================================

**STATEMENT OF OFFENDER**

On the above date, I was granted a community supervision sentence in the above styled and numbered cause. The conditions of my commun: supervision in this same cause as listed herein have been explained to me by the Community Supervision Officer whose signature appears belo I do verify by my own signature below that I fully understand all of the terms and conditions of my community supervision.

_____    _____
OFFENDER                           PRESIDING JUDGE

                                   DATE SIGNED  12-07-

_____    OSCAR SOLIZ, DISTRICT CLERK
COMMUNITY SUPERVISION OFFICER
or Probation Assistant

SID: 1010145 1

1999C3



U.S. Department of Justice
Immigration and Naturalization Service

THIS NOTICE TO APPEAR SUPERCEDES THE NOTICE TO APPEAR DATED DECEMBER 29, 2001

**Notice to Appear**

In removal proceedings under section 240 of the Immigration and Nationality Act

File No:   A90 865 331

In the Matter of:

Respondent:   Oswaldo Antonio CALDERON Terrazas                                       currently residing at:
c/o PISPC  Route 3 Box 341  Los Fresnos, Texas  78566                                    (956) 547-1700
                    (Number, street, city, state and ZIP code)                                               (Area code and phone number)

☐ 1. You are an arriving alien.

☐ 2. You are an alien present in the United States who has not been admitted or paroled.

☒ 3. You have been admitted to the United Sates, but are deportable for the reasons stated below.

The Service alleges that you:

1. You are not a citizen or national of the United States;

2. You are a native of MEXICO and a citizen of MEXICO;

3. You were admitted to the United States at Dallas, Texas on or about May 29, 1990 as a Lawful Permanent Resident Alien;

4. You were, on December 20, 2000, convicted in the 347TH District Court of Nueces County (at) Corpus Christi, Texas, Counts 1-2 for the offense of: SEXUAL ASSAULT OF A CHILD; Cause number 00-CR-603-H, (in violation of Section 237 (a)(2)(A)(iii) of the Immigration and Nationality Act). You were sentenced to a deferred term of adjudication for a period of six years.

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision (s) of law:

Section 237 (a) (2) (A) (iii) of the Immigration and Nationality Act (Act), as amended, in that, at any time after admission, you have been convicted of an aggravated felony as defined in section 101(a) (43) (A) of the Act, a law relating to sexual abuse of a minor.

☐ This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution.

☐ Section 235(b)(1) order was vacated pursuant to: ☐ 8 CFR 208.30(f)(2)   ☐ 8 CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at: _____
201 East Jackson Street,   Harlingen, Texas 78550
                    (Complete Address of Immigration Court, Including Room Number, if any)

on  To Be Set          at  To Be Set          to show why you should not be removed from the United States based on the
        (Date)                    (Time)
charge(s) set forth above.                    Cecilio L. Ruiz Jr. by: ____

                                                      Cecilio L. Ruiz, Jr.  Asst. District Director for Det. & Deporation
                                                      (Signature and Title of Issuing Officer)

Date:   January 17, 2002                    Harlingen, Texas
                                                      (City and State)

See reverse for important information

Form I-862 (Rev. 4-1-97)



## Notice to Respondent

**Warning:** Any statement you make may be used against you in removal proceedings.

**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are under removal proceedings. You are required to carry it with you at all times.

**Representation:** If you so chose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 3.16. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at not cost will be provided with this Notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents which you desire to have considered in connection with your case. If any document is in a foreign language, you must bring the original and a certified English translation of the document. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing.

At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear and that you are inadmissible or deportable on the charges contained in the Notice to Appear. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government. At the conclusion of your hearing, you have the right to appeal an adverse decision by the immigration judge.

You will be advised by the immigration judge before whom you appear, of any relief from removal for which you may appear eligible including the privilege of departing voluntarily. You will be given reasonable opportunity to make any such application to the immigration judge.

**Failure to appear:** You are required to provide the INS, in writing, with your full mailing address and telephone number. You must notify the Immigration Court immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide and address at which you may be reached during proceedings then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the INS.

---

### Request for Prompt Hearing

To expedite a determination in my case, I request an immediate hearing. I waive my right to have a 10-day period prior to appearing before an immigration judge.

Before: _Judy Rivera_ **Deportation Officer**
(Signature and Title of INS Officer)

(Signature of Respondent)

Date: **January 17, 2002**

---

### Certificate of Service

This Notice to Appear was served on the respondent by me on **January 17, 2002** (date), in the following manner and in compliance with section 239(a)(1)(F) of the Act:

☒ in person      ☐ by certified mail, return receipt requested      ☐ by regular mail

☒ Attached is a list of organizations and attorneys which provide free legal services.

☒ The alien was provided oral notice in the ~~Spanish~~ _English_ language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

(Signature of Respondent if Personally Served)

_Judy Rivera_ **Deportation Officer**
(Signature and Title of Officer)

Form I-862(Rev 4-1-97)



STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
Los Fresnos, Texas

File No.:  A 90 865 331                    February 25, 2002


In the Matter of

|                         |   |                        |
|-------------------------|---|------------------------|
| OSWALDO ANTONIO CALDERON- | ) | IN REMOVAL PROCEEDINGS |
| TERRAZAS,               | ) |                        |
| Respondent              | ) |                        |

CHARGE:        Section 237(a)(2)(A)(iii) of the Immigration and
               Nationality Act, as amended, in that at any time
               after admission, you have been convicted of an
               aggravated felony as defined in Section
               101(a)(43)(A) of the Act, a law relating to sexual
               abuse of a minor.


APPLICATIONS:  Termination of proceedings, cancellation of
               removal for certain permanent residents pursuant
               to Section 240A(a) of the Immigration and
               Nationality Act, and voluntary departure.


ON BEHALF OF RESPONDENT:        ON BEHALF OF SERVICE:

Jodi Goodwin, Esquire           Diane Bernstein, Esquire
                                Assistant District Counsel


## ORAL DECISION OF THE IMMIGRATION JUDGE

        The respondent is a male, native and citizen of Mexico.

Respondent was originally admitted to the United States as an

immigrant on or about May 29, 1990, through Dallas, Texas.  The

Immigration and Naturalization Service (hereinafter the Service)

issued a Notice to Appear (hereinafter NTA) dated January 17,

sa

2002, in the name of the respondent. The NTA is marked as
Exhibit Number 1. In the NTA, the Service alleges that
respondent is removable on the charge set forth above, that is
that respondent has been convicted of an aggravated felony.

During proceedings, respondent appeared with counsel,
admitted allegations 1, 2 and 3 in the Notice to Appear, and
denied removability and denied allegation number 4. The Service
presented conviction documents (See Exhibit Number 2). Based on
Exhibit Number 2 and the admissions by respondent, the Court
found that respondent was subject to removal. The Court did find
that based on Exhibit Number 2 that the Service has proven
factual allegation number 4 and that based on the admissions and
the conviction document that respondent was subject to removal.
The respondent has then designated Mexico for removal. Again,
upon the basis of respondent's admissions and Exhibit Number 2
and the documentary evidence of record, I do conclude that
removability has been established by evidence that is clear and
convincing. Again, respondent has designated Mexico as the
country of removal in the event removal were to be ordered.

Respondent did request relief in the form of
cancellation of removal and voluntary departure. The respondent
had previously requested that the Court terminate proceedings as
the respondent argued that respondent was not subject to removal.
In the interim from the date that respondent filed a motion until
today's date, the Board has ruled in Matter of Salazar, 23 I&N

A 90 865 331                    2              February 25, 2002

sa

Dec. 223 (BIA 2002), that situations like respondent, respondent has been convicted of an aggravated felony. As such, the Court is bound by the Board decision in Matter of Salazar. The respondent has requested that the Court follow Lujan-Armendarez v. INS, 222 F.3d 728 (9th Cir. 2000) and has argued in respondent's brief that is a Ninth Circuit decision wherein the Ninth Circuit overruled Matter of Roldan, Int. Dec. 3377 (BIA 1999). The Board of Immigration Appeals chose not to do that. Instead, the Board continues to adhere to U.S. v. Avalos, 251 F.3d 505 (5th Cir. 2000) and U.S. v. Hinojosa-Lopez, 130 F.3d 691 (5th Cir. 1997). This Court sits within the Fifth Circuit, as such the Court is bound by the decision of the Board that we are in the Fifth Circuit and the Court must follow the decision of the Fifth Circuit. As such, the Court does find that respondent has been convicted of an aggravated felony and, as such, respondent is not eligible for cancellation of removal. Respondent would have to prove that he has not been convicted of an aggravated felony in order to be eligible for cancellation. The respondent cannot do that. As such, respondent is not eligible for cancellation of removal. Likewise, in order to be eligible for voluntary departure, respondent would have to prove that he has not been convicted of an aggravated felony. The Court has found respondent has been convicted of an aggravated felony. As such, respondent is not eligible for that form of relief either. Having been convicted of an aggravated felony,

A 90 865 331                    3                    February 25, 2002

sa

respondent is not eligible for any relief from removal and as such the Court finds that respondent is subject to removal.

Upon consideration of all the evidence of record, I do find that respondent has been convicted of an aggravated felony and is statutory ineligible for any relief from removal. Therefore, it is hereby ordered that respondent is removable from the United States pursuant to Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act as an aggravated felon. It is further ordered that respondent is not eligible for cancellation of removal or voluntary departure. As such, those forms of relief are denied. It is hereby ordered that respondent is ordered removed to Mexico on the charges contained in the Notice to Appear.


ELEAZAR TOVAR
Immigration Judge

A 90 865 331                    4                February 25, 2002



IMMIGRATION COURT
RT 3 BOX 341   BUENA VISTA DR
LOS FRESNOS, TX  78566

In the Matter of

Case No.: A90-865-331

CALDERON-TERRAZAS, OSWALDO ANTONIO
        Respondent                    IN REMOVAL PROCEEDINGS

ORDER OF THE IMMIGRATION JUDGE

This is a summary of the oral decision entered on Feb 25, 2002.
This memorandum is solely for the convenience of the parties. If the
proceedings should be appealed or reopened, the oral decision will become
the official opinion in the case.
[ ]  The respondent was ordered removed from the United States to
                                           or in the alternative to
[X]  Respondent's application for voluntary departure was denied and
     respondent was ordered removed to *Mexico*
     alternative to
[ ]  Respondent's application for voluntary departure was granted until
        upon posting a bond in the amount of $ _____
     with an alternate order of removal to
[ ]  Respondent's application for asylum was ( )granted  ( )denied
     ( )withdrawn.
[ ]  Respondent's application for withholding of removal was ( )granted
     ( )denied  ( )withdrawn.
[ ]  Respondent's application for cancellation of removal under section
     240A(a) was ( )granted  ( )denied  ( )withdrawn.
[ ]  Respondent's application for cancellation of removal was ( ) granted
     under section 240A(b)(1)    ( ) granted under section 240A(b)(2)
     ( ) denied  ( ) withdrawn. If granted, it was ordered that the
     respondent be issued all appropriate documents necessary to give
     effect to this order.
[ ]  Respondent's application for a waiver under section _____ of the INA was
     ( )granted  ( )denied  ( )withdrawn or ( )other.
[ ]  Respondent's application for adjustment of status under section _____
     of the INA was ( )granted  ( )denied  ( )withdrawn. If granted, it
     was ordered that respondent be issued all appropriate documents necessary
     to give effect to this order.
[ ]  Respondent's status was rescinded under section 246.
[ ]  Respondent is admitted to the United States as a _____ until _____.
[ ]  As a condition of admission, respondent is to post a $ _____ bond.
[ ]  Respondent knowingly filed a frivolous asylum application after proper
     notice.
[ ]  Respondent was advised of the limitation on discretionary relief for
     failure to appear as ordered in the Immigration Judge's oral decision.
[ ]  Proceedings were terminated.
[X]  Other: *Respondent not eligible for any relief*
     Date: Feb 25, 2002
     Appeal: Waived/(Reserved)  Appeal Due By:
                 *March 27, 2002*        ELEAZAR TOVAR
                                         Immigration Judge

GPI



U.S. Department of Justice
Executive Office for Immigration Review
*Board of Immigration Appeals*

OMB #1105-006

**Notice of Appeal to the Board of Immigration Appeals of Decision of Immigration Judge**

| | |
|---|---|
| **1.** List Name(s) and "A" Number(s) of all Applicant(s)/Respondent(s): <br><br> Oswaldo Antonio CALDERON-Terrazas.    90-865-331 | For Official Use Only |

**!** **WARNING TO ALL APPLICANT(S)/RESPONDENT(S):** Names and "A"Numbers of everyone appealing the order must be written in Item #1.

**2.** Applicant/Respondent is currently    [X] DETAINED    [ ] NOT DETAINED

**3.** Appeal from the Immigration Judge's decision dated 2/25/02 _____

**4.** State in detail the reason(s) for this appeal You are not limited to the space provided below; use more sheets of paper if necessary. Write your name(s) and "A" number(s) on every sheet.

**!** **WARNING :** The failure to specify the factual or legal basis for the appeal may lead to summary dismissal without further notice unless you give specific details in a timely , separate written brief or statement filed with the Board.

The Respondent urges that the Immigration Judge erred in ordering him removed as a person who has been convicted of an aggravated felony. Particularly, the Respondent submits that because he was placed on an order of deferred adjudication, he has not suffered a conviction within the meaning of INA 101(a)(48).

Given the BIA's decision in Matter of Salazar-Regino, and the Ninth Circuit's decison in Lujan-Armendariz and Roldan v. INS, it is a violation of equal protection to find that the Respondent has suffered a conviction and is removable.

Other errors may be delineated upon receipt of the transcript.

---

**LAW OFFICE OF JODI GOODWIN**
**TRUST ACCOUNT**
1322 E. TYLER  956-428-7212
HARLINGEN, TX 78550

**1503**

88-0828/1149

PAY TO THE ORDER OF _Department of Justice_         3-20-2002 DATE    $ 110.00

_One hundred ten and NO/100_         DOLLARS

THIS CHECK IS DELIVERED IN CONNECTION WITH THE FOLLOWING ACCOUNT (S)

_Oswaldo Calderon-Terrazas_
_A# 90-865-331_

_Jan Beaman_

⑈001503⑈ ⑆114908289⑆ ⑈002 363 9⑈

(Form continues on back)
Form EOIR- 26

5. I ☐ do

   ☐ do not     desire oral argument before the Board of Immigration Appeals.

6. I ☒ will

   ☐ will not    file a separate written brief or statement in addition to the "Reason(s) for Appeal" written above or accompanying this form.

**!** **WARNING**: Your appeal may be summarily dismissed if you indicate in Item #6 that you will file a separate written brief or statement and, within the time set for filing, you fail to file the brief or statement and do not reasonably explain such failure.

**✍ SIGN HERE ➡** 7. X _____     March 19, 2002
Signature of Person Appealing                    Date
(or attorney or representative)

8.
| Mailing Address of Applicant(s)/Respondent(s) |
| --- |
| Oswaldo Antonio CALDERON-Terrazas |
| (Name) |
| PISPC, Rt 3, Box 341 |
| (Street Address) |
| (Apartment or Room Number) |
| Los Fresnos    TEXAS    78566 |
| (City, State, Zip Code) |

9.
| Mailing Address of Attorney or Representative |
| --- |
| Jodi Goodwin, Esq. |
| (Name) |
| 1322 East Tyler Avenue |
| (Street Address) |
| (Suite or Room Number) |
| Harlingen    Texas    78550 |
| (City, State, Zip Code) |

**!** **WARNING**: An attorney or representative will not be recognized as counsel on appeal and will not receive documents or correspondence in connection with the appeal, unless he/she submits a completed Form EOIR-27

## CERTIFICATE OF SERVICE
(Must Be Completed)

10.

I Jodi Goodwin, Esq. _____     mailed or delivered a copy of this notice of appeal
(Name)

on 3/19/02 _____ to Assistant District Counsel, INS
(Date)                    (Opposing Party)

at PO Box 1711, Harlingen, Texas 78551
(Address of Opposing Party)

**✍ SIGN HERE ➡** X _____
Signature of Person Appealing
(or attorney or representative)

## Have You?

☑ Read all of the General Instructions
☑ Provided all of the requested information
☑ Completed this form in English
☐ Provided a certified English translation for all non-English attachments

☑ Signed the form
☑ Served a copy of this form and all attachments on the opposing party
☑ Completed and signed the Certificate of Service
☑ Attached the required fee or fee waiver request



**U.S. Department of Justice**
Executive Office for Immigration Review

Decision of the Board of Immigration Appeals

Falls Church, Virginia 22041

File:   A90-865-331 - Harlingen

Date: **JUN 2 5 2002**

In re:   CALDERON-TERRAZAS, OSWALDO ANTONIO

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:  Goodwin, Jodi - Esq.

ON BEHALF OF SERVICE:  Thomas M. Bernstein, Assistant District Counsel

ORDER:

   PER CURIAM.  The Board affirms, without opinion, the results of the decision below.  The decision below is, therefore, the final agency determination.  *See* 8 C.F.R. § 3.1(a)(7).


                          FOR THE BOARD