/0

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

United States District Court
Southern District of Texas
FILED

DEC 1 3 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| **OSWALDO CALDERON-TERRAZAS** | ) | |
| | ) | |
| **versus** | ) | **C.A. NO. B-02-145** |
| | ) | |
| **AARON CABRERA, INS ACTING** | ) | |
| **DISTRICT DIRECTOR, and** | ) | |
| **JOHN ASHCROFT, UNITED STATES** | ) | |
| **ATTORNEY GENERAL** | ) | |

**PETITIONER'S OPPOSITION TO RESPONDENT'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

I. ISSUES ADDRESSED                                                                                        1

II. ARGUMENT                                                                                                    2

    A.    IT WOULD VIOLATE BOTH DUE PROCESS AND EQUAL
           PROTECTION TO CONCLUDE THAT MR. CALDERON IS BOTH
           SUBJECT TO REMOVAL, AND INELIGIBLE FOR ANY FORM OF
           DISCRETIONARY RELIEF, AND IT IS THEREFORE INCUMBENT
           UPON THE BIA TO SEEK AN ALTERNATIVE INTERPRETATION
           OF 8 U.S.C. §1101(a)(48); ONE WHICH DOES NOT RENDER IT
           CONSTITUTIONALLY INFIRM                                                              2

           1.    UNDER THE LAW AS INTERPRETED WHEN HE PLED
                  GUILTY IN EXCHANGE FOR DEFERRED ADJUDICATION,
                  THIS DISPOSITION WAS NOT A CONVICTION, AND IT
                  VIOLATES SUBSTANTIVE DUE PROCESS TO APPLY A
                  NEW INTERPRETATION UNDER WHICH REMOVAL IS A
                  RETROACTIVE, AND MANDATORY, CONSEQUENCE OF
                  SUCH A DISPOSITION                                                                        3

           2.    SUCH APPLICATION ALSO OFFENDS PROCEDURAL DUE
                  PROCESS, BECAUSE IT DEPRIVED PETITIONER OF "FAIR
                  NOTICE" OF THE MAGNITUDE OF THE PENALTY THAT
                  COULD BE IMPOSED AS A RESULT OF HIS PLEA TO THE
                  CRIMINAL CHARGES                                                                          8

                      a.    There are limits on an agency's use of adjudication to
                          announce new standards, where people have relied on the
                          prior standards                                                                                  9

        b.     The Constitutional mandate of "fair notice" also precludes
             the application of the new definition to Mr. Calderon 10

    3.    APPLICATION OF THESE NEW INTERPRETATIONS
         TO MS. CALDERON ALSO OFFENDS EQUAL
         PROTECTION          13

        a.     Location of proceedings         13

B.    EVEN UNDER *U.S. v. HERNANDEZ-AVALOS*, AN ALTERNATE
      INTERPRETATION IS POSSIBLE, SINCE TEXAS LAW REQUIRES
      THAT A DEFENDANT CONVICTED OF A FELONY BE
      SENTENCED TO A SPECIFIC PERIOD OF INCARCERATION, AND
      NO SUCH PERIOD OF INCARCERATION IS IMPOSED WITH
      DEFERRED ADJUDICATION         13

C.    IT VIOLATES DUE PROCESS WHERE THE BOARD OF IMMIGRATION
      APPEALS DOES NOT MEANINGFULLY ADDRESS ALL RELEVANT
      MATERIAL FACTORS IN ISSUING ITS DECISION      15

III.  CONCLUSION         15

CERTIFICATE OF SERVICE         16

## TABLE OF AUTHORITIES

### CASES

*Accardi v. Shaughnessy,*
     347 U.S. 260 (1954)         9, 12

*BMW of North America v. Gore,*
     517 U.S. 559 (1996)         11

*Bouie v. City of Columbia,*
     378 U.S. 347 (1964)         11

*Bradley v. School Bd. of City of Richmond,*
     416 U.S. 696 (1974)         12

*Bridges v. Wixon,* 326 U.S.
     326 U.S. 135 (1945)         3

*Diaz Resendez v. INS,*
    960 F.2d 493 (5th Cir. 1992)                      **15**

*Francis v. INS,*
    532 F.2d 268 (2nd Cir. 1976)                      **8**

*Garberding v. INS,*
    30 F.3d 1187 (9th Cir.1994)                      **8**

*Gerbier v. Holmes,*
    280 F.3d. 297 (3rd Cir. 2002)                      **1**

*Griffon v. USDHHS,*
    802 F.2d 146 (5th Cir. 1986)                      **12**

*Hoang v. Comfort,*
    282 F.3d 1247 (10th Cir. 2002)                      **1, 6**

*INS v. Cardoza-Fonseca,*
    94 L.Ed2d 434 (1987)                      **2**

*INS v. St. Cyr,*
    121 S.Ct. 2271 (2001)                      **1, 9**

*Jideonwo v. INS,*
    224 F.3d 692 (7th Cir 2000)                      **9, 12**

*Kaiser Aluminum & Chemical Corp. v. Bonjorno,*
    494 U.S. 827 (1990)                      **8**

*Kim v. Ziglar,*
    276 F.3d 523 (9th Cir. 2002)                      **1, 6**

*Knuck v. Wainwright,*
    759 F.2d 856 (11th Cir. 1985)                      **12**

*Landgraf v. USI Film Prods.,*
    511 U.S. 244 (1994)                      **9, 12**

*Landon v. Plasencia,*

459 U.S. 21 (1982)                                                           3,5

*Lujan-Armendariz v. INS,*
     222 F.3d 728 (9th Cir. 2000)                         7, 13

*M.L.B. v. S.L.J.,*
     117 S.Ct. 555 (1996)                               6

*Mathews v. Eldridge,*
     424 U.S. 319 (1976)                               5

*Moore v. City of East Cleveland,*
     431 U.S. 494 (1977)                             3, 4

*NLRB v. Bell Aerospace Co.,*
     416 U.S. 267 (1974)                               9

*Paredes- Urrestarazu v. INS,*
     36 F.3d 801 (9th Cir. 1994)                       8

*Patel v. Zemski,*
     275 F.3d 299 (3rd Cir. 2001)                      1, 6

*Pension Benefit Guaranty Corp. v. Gray,*
     467 U.S. 717 (1984)                               7

*Reno v. American-Arab Anti Discrimination Committee,*
     525 U.S. 471 (1999)                             10

*Reno v. Flores,*
     507 U.S. 292 (1993)                               6

*Rodriguez Gutierrez v. INS,*

     59 F.3d 504 (5th Cir. 1995)                       15

*Ruangswang v. INS,*
     591 F.2d 39 (9th Cir.1978)                        9

*SEC v. Chenery Corp.,*

32 U.S. 194 (1947)                                                          9

*Shaffer v. Heitner,*
    433 U.S. 186 (1977)                                                   11

*Stanley v. Illinois,*
    405 U.S. 645 (1972)                                                   3, 4

*Troxel v. Granville,*
    120 S.Ct. 2054 (2000)                                                 6

*U.S. v. Hernandez-Avalos,*
    251 F.3d 505 (5th Cir. 2001)                                        2, 3, 9, 14

*U.S. v. Moosa,*
    171 F.3d 994 (5th Cir. 1999)                                        13

*Washington v. Glucksberg,*
    521 U.S. 702 (1997)                                                   5, 6

*Webster v. Reproductive Health Services,*
    492 U.S. 490 (1989)                                                   2, 13

*Zadvydas v. Davis,*
    121 S.Ct. 2491 (2001)                                                 1, 2, 6

**STATUTES**

8 U.S.C. §1101(a)(48)(A)                                                   2, 4, 6,
                                                                          10

8 U.S.C. §1229b(a)                                                         4

8 U.S.C. §§1101(a)(43)(B)                                                  2

Federal First Offender Act,
    18 U.S.C. §3607(a)                                                     7

Texas Code of Criminal Procedure,
    Article 42.12, Section 5(a)                                           3, 7

Texas Penal Code,
    §§13.32 - 13.35                                                       14

## ADMINISTRATIVE DECISIONS

*Matter of K-V-D-,*
     Int. Dec. 3422 (BIA 1999)                     13, 14

*Matter of L-G-,*
     21 I&N Dec. 89 (BIA 1995)                     13

*Matter of Ozkok,*
     19 I&N Dec. 546 (BIA 1988)                  7
*Matter of Roldan,*
     Int. Dec. No. 3377 (BIA 1999)              2, 3, 9, 13

*Matter of Silva,*
     16 I&N Dec. 26 (BIA 1976)                    8

## OTHER AUTHORITIES

Nancy Morawetz,
     "Rethinking Retroactive Deportation Laws and the Due
     Process Clause," NYU Law Rev., Vol 73, No. 1, April 1998      10

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **OSWALDO CALDERON-TERRAZAS** | ) | |
| | ) | |
| **versus** | ) | **C.A. NO. B-02-145** |
| | ) | |
| **AARON CABRERA, INS ACTING** | ) | |
| **DISTRICT DIRECTOR, and** | ) | |
| **JOHN ASHCROFT, UNITED STATES** | ) | |
| **ATTORNEY GENERAL** | ) | |

**PETITIONER'S OPPOSITION TO RESPONDENT'S MOTION TO DISMISS**

Petitioner, through the undersigned, respectfully files the instant opposition to Respondent's Motion to Dismiss, (herein cited as (INS:_), and would address the constitutional issues raised herein, most of which were not considered in Respondents' Return and Motion to Dismiss. [1] Said constitutional arguments derive in large part from two recent Supreme Court cases, to wit, *INS v. St. Cyr,* 121 S.Ct. 2271 (2001), and *Zadvydas v. Davis,* 121 S.Ct. 2491 (2001), and several lower court cases applying the retroactivity and Substantive Due Process principles articulated therein in other contexts relating to immigrants. *See, e.g., Hoang v. Comfort,* 282 F.3d 1247 (10th Cir. 2002); *Kim v. Ziglar,* 276 F.3d 523 (9th Cir. 2002), and *Patel v. Zemski,* 275 F.3d 299 (3rd Cir. 2001).

These arguments find additional support in older lines of Supreme Court cases, setting limits on the use of adjudication for the purpose of announcing new rules of conduct by administrative agencies, and the procedural Due Process right to "fair notice" of the scope which may be imposed for misconduct, and in more recent cases, such as *Gerbier v. Holmes,* 280 F.3d. 297 (3rd Cir. 2002).

## I. ISSUES ADDRESSED

---

[1] While Respondents discuss the Federal First Offender Act, ("FFOA"), they do not address any of the other Constitutional issues raised in Mr. Calderon's petition, including the other Equal Protection claim and Procedural Due Process questions.

A. IT WOULD VIOLATE BOTH DUE PROCESS AND EQUAL PROTECTION TO
CONCLUDE THAT PETITIONER IS BOTH SUBJECT TO REMOVAL, AND INELIGIBLE
FOR ANY FORM OF DISCRETIONARY RELIEF, AND IT IS THEREFORE INCUMBENT
ON THE COURT TO ADOPT ANY REASONABLE INTERPRETATION OF THE STATUTE
WHICH DOES NOT RENDER IT CONSTITUTIONALLY INFIRM AS APPLIED.

    1. WHEN MR. CALDERON PLED GUILTY TO THE SEXUAL ASSAULT
    CHARGE, IN EXCHANGE FOR DEFERRED ADJUDICATION, THIS
    DISPOSITION WAS NOT, AND IS NOT, CONSIDERED A CONVICTION

    2. IF APPLIED TO RENDER MR. CALDERON SUBJECT TO MANDATORY
    REMOVAL, 8 U.S.C. §§1101(a)(48)(A) AND (a)(43)(A) WOULD ALSO
    VIOLATE PROCEDURAL DUE PROCESS.

    3. IT WOULD ALSO VIOLATE EQUAL PROTECTION TO APPLY THESE
    PROVISIONS IN THIS MANNER TO MR. CALDERON.

B. AN ALTERNATIVE CONSTRUCTION IS FAIRLY POSSIBLE UNDER TEXAS LAW.

C. IT VIOLATES DUE PROCESS WHERE THE BOARD OF IMMIGRATION APPEALS
DOES NOT MEANINGFULLY ADDRESS ALL RELEVANT MATERIAL FACTORS IN
ISSUING ITS DECISION

## II. ARGUMENT

While the BIA cannot rule upon the constitutionality of the statute it administers, the existence of
serious constitutional problems mandates that it seek a construction of the statute which would
avoid them. *See, Webster v. Reproductive Health Services*, 492 U.S. 490,562 (1989) (where fairly
possible, statutes must be construed to avoid serious constitutional problems); *INS v. Cardoza-
Fonseca,* 94 L.Ed2d 434,459 (1987) (reaffirming "the long-standing principle of construing any
lingering ambiguities in deportation statutes in favor of the alien."). *See also, Zadvydas, v.
Underdown, supra,* reading a "reasonable time" limitation into the statute authorizing detention of
aliens who could not be promptly deported.  The BIA failed to follow this mandate in the case at
bar. Applying 8 U.S.C. §§1101(a)(48)(A) and (a)(43)(A), as interpreted in *Matter of Roldan*, Int.
Dec. No. 3377 (BIA 1999) and *U.S. v. Hernandez-Avalos*, 251 F.3d 505 (5th Cir. 2001) raises
grave constitutional concerns.  And, it is urged, an alternate construction is fairly possible.

**A. AS APPLIED HEREIN, IT WOULD VIOLATE BOTH DUE PROCESS AND EQUAL
PROTECTION TO CONCLUDE THAT MR. CALDERON IS SUBJECT TO REMOVAL,
AND INELIGIBLE FOR DISCRETIONARY RELIEF, AND IT WAS THEREFORE
INCUMBENT UPON THE BIA TO SEEK AN ALTERNATIVE INTERPRETATION OF**

**8 U.S.C. §1101(a)(48); ONE WHICH DOES NOT RENDER IT CONSTITUTIONALLY INFIRM.**

Mr. Calderon would first note the internal inconsistency and illogic of determining whether a conviction exists by looking to federal, rather than state law, and then looking to state law to determine whether that conviction was for a felony, but doing so without considering state requirements for a felony conviction. This, in essence, is the result of applying both *Matter of Roldan* and *U.S. v. Hernandez-Avalos* herein. These problems are magnified where, as here, the Petitioner is a lawful permanent resident, ("LPR").

When Mr. Calderon negotiated his plea agreement, he relied on the plain meaning of Texas Code of Criminal Procedure, Article 42.03 §5 with respect to the fact that this disposition would not be considered a conviction, and that he would not suffer and further disqualification or disability imposed by law for conviction of an offense. Tex. Code Crim. Proc. Art 42.03 §5(c).

> **1. UNDER THE LAW OF TEXAS AS INTERPRETED WHEN HE AGREED TO PLEAD GUILTY TO THE SEXUAL ASSAULT CHARGE IN EXCHANGE FOR DEFERRED ADJUDICATION, THIS DISPOSITION WAS NOT A CONVICTION, AND IT VIOLATES SUBSTANTIVE DUE PROCESS TO APPLY A NEW INTERPRETATION UNDER WHICH REMOVAL IS A MANDATORY CONSEQUENCE OF SUCH A DISPOSITION.**

As a lawful permanent resident, Mr. Calderon has a fundamental liberty interest in being able to live and work in the United States, and in remaining here with her family. *See, Landon v. Plasencia,* 459 U.S. 21,34 (1982), citing *Bridges v. Wixon,* 326 U.S. 326 U.S. 135,154 (1945); *Moore v. City of East Cleveland,* 431 U.S. 494,499 (1977), and *Stanley v. Illinois,* 405 U.S. 645,651 (1972):

> Plasencia's interest here is, without question, a weighty one. She stands to lose the right "to stay and live and work in this land of freedom," ... Further, she may lose the right to rejoin her immediate family, a right that ranks high among the interests of the individual. ...

*Moore* and *Stanley* are both fundamental rights cases, involving family relationships. *Stanley*

3

struck down a conclusive presumption similar to that involved herein, and *Moore* simply concluded that the interest advanced by the State was insufficient to justify the particular intrusion into the family unit. As an LPR, Mr. Calderon enjoys the same Due Process rights, to develop and enjoy intimate family relationships in the United States.

In *Stanley,* the Court addressed the state's ability to interfere with these relationships by establishing a "conclusive presumption" that certain categories of individuals, to wit, unwed fathers, were not worthy of the privilege of being custodians of their children. The Court reasoned as follows, 405 U.S. at 649 (emphasis added):

> ... Is a presumption that distinguishes and burdens all unwed fathers constitutionally repugnant? **We conclude that, as a matter of due process of law, Stanley was entitled to a hearing on his fitness as a parent before his children were taken from him** and that, by denying him a hearing and extending it to all other parents whose custody of their children is challenged, the State denied Stanley the equal protection of the laws guaranteed by the Fourteenth Amendment.

A similar question was raised in *Moore v. City of East Cleveland, supra.* There, the issue was whether the State had gone too far in regulating family relationships, by defining the characteristics of an "acceptable" family, *id.* at 499 (internal citations omitted):

> When a city undertakes such intrusive regulation of the family,.. the usual judicial deference to the legislature is inappropriate. "This Court has long recognized that freedom of personal choice in matters of marriage and family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment." ... have consistently acknowledged a "private realm of family life which the state cannot enter." ... Of course, the family is not beyond regulation. ... But when the government intrudes on choices concerning family living arrange-ments, this Court must examine carefully the importance of the governmental interests advanced and the extent to which they are served by the challenged regulation. ...

Both forms of analysis are pertinent herein. Mr. Calderon asserts that the combination of provisions enacted by IIRIRA, 8 U.S.C. §1101(a)(48)(A), together with the repeal of §212(c), which was replaced by 8 U.S.C. §1229b(a), containing an absolute prohibition on granting

4

discretionary relief to anyone convicted of an "aggravated felony," (plus the overly expansive definition of what now constitutes such "aggravated felonies"), creates an unconstitutional "conclusive presumption" that all LPRs who have been convicted of any offense in that list are unworthy of being able to stay with their families in the United States, even where the State has deemed it appropriate to grant rehabilitative treatment to a first time offender. Similarly, by failing to permit any showing of countervailing equities, these provisions are unjustifiable. Thus, it is submitted, these provisions are not sufficiently narrowly tailored to meet a compelling state interest.

In *Landon v. Placencia,* the Court further noted as follows, *id.*:

> The government's interest in efficient administration of the immigration laws at the border also is weighty. Further, it must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature.

The Court resolved the seeming tension between these principles as follows, *id.*, at 34-35:

> The role of the judiciary is limited to determining whether the procedures meet the essential standard of fairness under the Due Process Clause and does not extend to imposing procedures that merely displace congressional choices of policy.

The Court then applied the balancing test of *Mathews v. Eldridge*, 424 U.S. 319,334-335 (1976), and concluded that the exclusion procedures were not *per se* constitutionally inadequate, but that there was a question as to whether or not the procedures actually received had been adequate, and remanded for further proceedings. In other words, the Court did *not* find that Congress' plenary control over immigration diminished the fundamental right involved. To the contrary, the Court analyzed the case as one involving Procedural Due Process, to which INS conceded she was entitled. There was no claim of any Substantive Due Process violation.

Nonetheless, the existence of this fundamental right, which, it must be emphasized, is enjoyed only by those who have a *right* to reside in this country, (i.e., by lawful permanent residents), triggers a "compelling state interest" analysis in determining whether a given abridgement passes Substantive Due Process muster. *Washington v. Glucksberg,* 521 U.S. 702,721 (1997):

> As we stated recently in [*City of Boerne v.*] *Flores,* the Fourteenth Amendment "forbids the government to infringe ... 'fundamental' liberty interests *at all,* no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest."

A statute may violate Substantive Due Process either on its face, or, (as is the case herein), as applied in a particular situation. *See, Troxel v. Granville*, 120 S.Ct. 2054 (2000) (As applied, Washington statute violated substantive due process rights of mother). *See also, Washington v. Glucksberg, supra* at 720 (The Fourteenth Amendment's Due Process Clause has a substantive component that "provides heightened protection against government interference with certain fundamental rights and liberty interests," including parents' fundamental right to make decisions concerning the care, custody, and control of their children); *M.L.B. v. S.L.J.*, 117 S.Ct. 555,557 (1996) ("The interest of parents in their relationship with their children is sufficiently fundamental to come within the finite class of liberty interests protected by the Fourteenth Amendment").

This analysis is underscored by the recent decision of the Supreme Court in *Zadvydas v. Davis, supra*. Rather than a fundamental right, *Zadvydas* involved a liberty interest, to wit, the indefinite detention of aliens under final deportation orders which could not be effectuated in a reasonable period of time. But by applying Substantive Due Process analysis to this issue, the Court reaffirmed the continued vitality of that doctrine, as applied to lawful permanent residents. *See also, Patel v. Zemski, Hoang v. Comfort,* and *Kim v. Ziglar*, applying the same analysis to the mandatory detention of LPRs convicted of certain offenses. [2]

Applying Substantive Due Process analysis to the case at bar, it is respectfully urged that §1101(a)(48)(A) is not narrowly tailored to serve a compelling state interest, and that as applied herein, it violates Substantive Due Process. Mr. Calderon has resided in the United States since 1978, when he was two years old. He has been a lawful permanent resident since 1990: over ten years. He served in the United States Army in Germany and Kosovo from 1997 to 1999. In

---

[2] *Reno v. Flores,* 507 U.S. 292 (1993), found that a regulation regarding detained juvenile aliens did not violate substantive due process, while noting, *id.* at 304, that "the child's fundamental rights must not be impaired."

December of 1999, Mr. Calderon was charged with sexualt assault of a child (statutory rape). Pursuant to a plea bargain, he pled guilty to the offense, and on December 20, 2000, was placed on probation, without adjudication of guilt, pursuant to Article 42.12, Section 5(a), Texas Code of Criminal Procedure.

Mr. Calderon urges that no compelling state interest is served by a statute, or combination of statutes, which mandate the deportation of an LPR, no matter his equities, for the sole reason that he pled guilty to the sexual assault of a child (statutory rape), at a time when (and in reliance on that fact that) such a plea was not a conviction, and most particularly, where the sentencing Judge considered the circumstances to warrant giving him a second chance by applying a rehabilitative statute, and granting deferred adjudication. This analysis can also be supported by the legislative history, showing that in deciding to legislatively overrule *Matter of Ozkok*, Congress did not consider the impact on LPRs such as Mr. Calderon.  To be narrowly tailored, a statute involving deportation of an LPR must allow for the consideration of factors beyond the fact that the person has committed the offense of sexual assault. [3]  In enacting the FFOA, Congress made a policy judgment that it is in the public interest to  rehabilitate such persons. As the Ninth Circuit concluded in *Lujan-Armendariz v. INS*, 222 F.3d 728 (9th Cir. 2000) there is nothing in the legislative history of IIRIRA to show that Congress had changed its collective mind with respect to this important issue.

While the convictions in *Lujan-Armendariz* had been vacated, as INS notes, (INS:26), this was not dispositive.  Under the FFOA, [4] the proceedings are not considered to be a conviction for any

_____

[3]    Moreover, absent specific Congressional justification therefor, retroactive application violates Due Process. *Pension Benefit Guaranty Corp. v. Gray*, 467 U.S. 717,729-30 (1984). Here, there was no such specific justification.

[4]    18 U.S.C. §3607(b) provides, in part (emphasis added):

*A disposition under subsection* (a), or a conviction that is the subject of an expungement order under subsection (c), *shall not be considered a conviction* for the purpose of a disqualification or a disability imposed by law upon conviction of a

purpose, at any time. Moreover, *Lujan* was not about the "clarity and meaning of the statute's language as applied to rehabilitative expungements." (INS:29). Rather, it concluded that IIRIRA did not amend the FFOA, and that the Equal Protection conclusions reached in *Garberding v. INS*, 30 F.3d 1187 (9th Cir.1994), and *Paredes- Urrestarazu v. INS*, 36 F.3d 801 (9th Cir. 1994), still applied. And while extending this consideration to persons processed under state law was, on the part of the BIA, a "'policy' or 'a long-standing practice,'" (INS:30), it is simply not true that the Court therefore acknowledged that the "extension of FFOA treatment derived out of Board policy and not a constitutional mandate." *Id.*. This was the "policy" of the **BIA,** which cannot adjudge the constitutionality of the statute it administers. [5] But the rulings from the Ninth Circuit, when that "policy" was changed, were based squarely on the Constitutional mandate of Equal Protection. [6]

### 2.  SUCH APPLICATION ALSO OFFENDS PROCEDURAL DUE PROCESS, BECAUSE IT DEPRIVED PETITIONER OF "FAIR NOTICE" OF THE MAGNITUDE OF THE PENALTY THAT MIGHT BE IMPOSED AS A RESULT OF HIS PLEA TO THE CRIMINAL CHARGES.

The same result is reached through two other lines of Supreme Court cases, involving the limits the use of adjudication by administrative agencies to announce new standards of conduct, and the constitutional mandate of "fair notice" before penalties can be applied, even in the context of civil cases. The "principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal human appeal." *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 855 (1990) (Scalia, J., concurring).

---

crime, or *for any other purpose.*

[5]   The BIA uses "policy" as a stand-in for the constitutional conclusions it cannot directly articulate. For example, in *Matter of Silva,* 16 I&N Dec. 26 (BIA 1976), the BIA applied nationwide the mandate of *Francis v. INS,* 532 F.2d 268 (2nd Cir. 1976), holding that there was no rational basis for discriminating between those groups of residents who had departed the U.S. and returned while inadmissible, and those who had made no such departure, and extending §212(c) relief to LPRs in deportation proceedings.

[6]   The Fifth Circuit has not yet considered this issue.

### a. There are limits on the use of adjudication to announce new standards, particularly where people may have relied on the prior standards.

To apply *Matter of Roldan* and *U.S. v. Hernandez-Avalos* to Mr. Calderon converts a disposition which, at the time of his plea bargain, was not a conviction, into one which requires mandatory deportation. Administrative agencies may use adjudication to "announc(e) and (apply) a new standard of conduct," *SEC v. Chenery Corp.,* 332 U.S. 194, 203 (1947). And, as a general rule, under *NLRB v. Bell Aerospace Co.,* 416 U.S. 267, 290-95 (1974), adjudication can be used "to announce new principles applicable to the specific parties. . .even if the principles involve a change from past policies."

However, a change which does more than refine an existing standard may be found to be arbitrary or capricious if an affected party has detrimentally relied on the old standard. *See NLRB v. Bell Aerospace, supra* at 294-95; *Ruangswang v. INS,* 591 F.2d 39, 44-45 (9th Cir.1978). A change in interpretation made through "adjudication might also be inappropriate where 'some new liability' results from 'past actions which were taken in good-faith reliance on Board pronouncements.'" *Ruangswang v INS, supra* at 44 (quoting *NLRB v. Bell Aerospace Co., supra*). [7]

The limitations on adjudication to announce new standards of conduct echo the familiar presumption against retroactivity recently affirmed by the Supreme Court in *INS v. St. Cyr, supra.* Retroactive application of a new rule should be informed and guided by "familiar considerations of fair notice, reasonable reliance, and settled expectations." *Landgraf v. USI Film Prods.,* 511 U.S. 244, 270 (1994). *See also, Accardi v. Shaughnessy,* 347 U.S. 260, 266-68 (1954). It is now beyond dispute that "elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly and that settled expectations should not be lightly disrupted." *INS v St. Cyr, supra* at 316. *See also Jideonwo v. INS,* 224 F.3d 692, 696-97 (7th Cir 2000).

---

[7]  Respondents seek *Chevron* deference for its policy change, (INS:30-31). However, such deference only applies where the issue is one of a statutory void, left to be filled by the agency. It has no bearing on whether or not a new policy is constitutional.

9

### b. The Constitutional Mandate of Fair Notice Also   Precludes Application Of The New Definition Herein.

Although not "punishment" for a criminal offense, deportation has long been recognized as a "penalty." *See, Reno v. American-Arab Anti Discrimination Committee,* 525 U.S. 471, 497-98 (1999), Justice Ginsberg, concurring in Part I and the result:

> As this Court has long recognized, "[t]hat deportation is a penalty - at times a most serious one - cannot be doubted." *Bridges,* 326 U.S., at 154, 65 S.Ct. 1443; see also *ibid.* (Deportation places "the liberty of an individual ... at stake.... Though deportation is not technically a criminal proceeding, it visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom.")

Deportation then is an additional penalty attached to the "criminal offense," through changed administrative and judicial interpretations thereof. This occurs even though, under state law, there is no conviction, and never will be one, if the Petitioner successfully completes his probation. Thus, **as applied herein**, §1101(a)(48)(A) is unconstitutional. It makes qualitative changes in the penalty imposed, in a wholly unexpected manner. *See,* Nancy Morawetz, "Rethinking Retroactive Deportation Laws and the Due Process Clause," NYU Law Rev., Vol 73, No. 1, April 1998. *See also, Arce v. Walker,* 139 F.3d 329,333-34 (2nd Cir. 1998):

> [T]he Due Process Clause protects against restraints or conditions of confinement that "exceed[ ] the sentence in ... an unexpected manner." *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300; *see id.* at 479 n. 4, 115 S.Ct. at 2297 n. 4 (observing that proscribed conditions of confinement must be "qualitatively different from the punishment characteristically suffered by a person convicted of crime, and [have] stigmatizing consequences." (citation and internal quotation marks omitted)); *see, e.g., Vitek v. Jones,* 445 U.S. 480, 493, 100 S.Ct. 1254, 1264, 63 L.Ed.2d 552 (1980) (holding that "involuntary commitment to a mental hospital is not within the range of conditions of confinement to which a prison sentence subjects an individual"); *Washington v. Harper,* 494 U.S. 210, 221-22, 110 S.Ct. 1028, 1036-37, 108 L.Ed.2d 178 (1990) (holding that inmate has a liberty interest under the Due Process Clause to refuse the involuntary administration of psychotropic drugs).

These protections exist even though deportation is a civil penalty, rather than criminal

punishment, is involved.  As held in *BMW of North America v. Gore*, 517 U.S. 559, 574 (1996):

> Elementary notions of fairness enshrined in this Court's constitutional
> jurisprudence dictate that a person receive fair notice not only of the conduct that
> will subject him to punishment but also of the severity of the penalty that a State
> may impose. FN22

> FN22. See *Miller v. Florida*, 482 U.S. 423 ... (1987) (*Ex Post Facto* Clause
> violated by retroactive imposition of revised sentencing guidelines that provided
> longer sentence for defendant's crime); *Bouie v. City of Columbia*, 378 U.S. 347...
> (1964) (retroactive application of new construction of statute violated due
> process); *id.,* at 350-355, 84 S.Ct., at 1701-1703 (citing cases); *Lankford v.
> Idaho*, 500 U.S. 110... (1991) (due process violated because defendant and his
> counsel did not have adequate notice that judge might impose death sentence).
> The strict constitutional safeguards afforded to criminal defendants are not
> applicable to civil cases, but the basic protection against "judgments without
> notice" afforded by the Due Process Clause, *Shaffer v. Heitner*, 433 U.S. 186,
> 217... (1977) (STEVENS, J., concurring in judgment), is implicated by civil
> penalties

For LPRs such as Mr. Calderon, deportation is unquestionably a "civil penalt[y]" imposed as a
result of his criminal "conviction." It therefore violates Due Process as a retroactive application of
new construction of a statute, as in *Bouie v. City of Columbia, supra*, and because it imposes a
"civil penalt[y]" without prior notice, as in *Shaffer v. Heitner, supra*.  And, as in *BNW of North
America v. Gore, supra*, it confounds the "[e]lementary notions of fairness enshrined in this
Court's constitutional jurisprudence" which "dictate that a person receive fair notice not only of
the conduct that will subject him to punishment but also of the severity of the penalty that a State
may impose." Here, Mr. Calderon had absolutely no notice that deportation would become a
mandatory consequence of his plea, regardless of his rehabilitation, family ties, lengthy residence
in the U.S., service in the military, or other equities.

As noted in *BMW of North America v. Gore, supra,* not all new interpretations of law can be
given retroactive effect and still comport with Due Process. This is particularly true where, as
here, retroactive application of the new interpretation would work serious injustice. *See also,*

11

*Jideonwo v. INS, supra*: [8]

> The Supreme Court has held that applying a law retroactively such that it results in
> "manifest injustice" violates the Due Process Clause. *See Bradley v. School Bd. of
> City of Richmond*, 416 U.S. 696, 716 ... (1974). Manifest injustice may occur
> where a new law changes existing rights or imposes unanticipated obligations on a
> party without providing appropriate notice. *See id.* at 720,... *see also Landgraf v.
> USI Film Prods.*, 511 U.S. 244, 266 ... (1994) ("The Due Process Clause also
> protects the interests in fair notice and repose that may be compromised by
> retroactive legislation."). Retrospective changes in INS procedure have been found
> to violate the due process rights of affected aliens. For example, in *Accardi v.
> Shaughnessy*, the Supreme Court held that retroactively changing a procedure for
> granting relief from deportation from one of discretion to one of predetermined
> results violated the Due Process Clause where it took away a procedure to which
> the alien-petitioner previously had a right prescribed by statute. 347 U.S. 260 ...
> (1954) ...

In fact, Accardi is on all fours with the case at bar. See *also, Griffon v. USDHHS*, 802 F.2d 146
(5th Cir. 1986) (agency cannot construe statute such that civil fines may be imposed for conduct
which predated statute).

Similarly, converting the effect of Mr. Calderon's "guilty" plea into automatic grounds for
removal has an *ex post facto* effect, even though it results from a change in the **interpretation** of
a statute, and not from an amendment to the statute itself. *See, Knuck v. Wainwright,* 759 F.2d
856,859 (11th Cir. 1985):

> In *Weaver v. Graham,* 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17
> (1981),... the Supreme Court held that two critical elements must be present for a
> criminal or penal law to be ex post facto: the statute must be retrospective, and it
> must be disadvantageous to the offender. **The first element is met because
> Knuck's offense occurred in 1975 while the change in interpretation of the
> law did not occur until 1979.** ... The Court in *Weaver* observed that "a law need
> not impair a 'vested right' to violate the *ex post facto* prohibition." *Id.* "Critical to
> relief under the *Ex Post Facto* Clause is not an individual's right to less

---

[8] Notably, *Jideonwo* was cited with approval by the Supreme Court in *INS v. St. Cyr, supra,*
121 S.Ct.at 2292.

punishment, but the lack of fair notice...." *Id.* at 30, 101 S.Ct. at 965.

Having found an *ex post facto* violation, the Court did not reach the claim that the change in the interpretation also violated Due Process. *Id.*. However, this holding also supports Ms. Salazar' claim that the retroactive application of a new **interpretation** of a statute can, and in her case does, violate Due Process.

### 3. APPLICATION OF THESE NEW INTERPRETATIONS TO MR. CALDERON ALSO OFFENDS EQUAL PROTECTION.

#### a. LOCATION OF PROCEEDINGS

Had Mr. Calderon been placed in proceedings within the Ninth, rather than the Fifth Circuit, this violation of Equal Protection would have protected him from removal. *See, Lujan-Armendariz, supra.*

It also violates Equal Protection where the results to vary so dramatically based on the location of the proceedings. Indeed, it was precisely this problem which led the BIA to decide in *Matter of L-G-,* and *Matter of K-V-D-, supra,* to utilize a federal standard in determining whether an offense was an aggravated felony, rather than looking to the vagaries of state law.

Under cases *Webster,* and *Cardoza-Fonseca,* the BIA, and this Court, are bound to adopt any reasonable alternative construction. Mr. Calderon urges that an interpretation exists which avoids these constitutional concerns. Based on the fact that Texas does not consider Mr. Calderon to have been convicted of anything, much less, of a felony.

### B. EVEN UNDER *HERNANDEZ-AVALOS*, AN ALTERNATE INTERPRETATION IS POSSIBLE, SINCE TEXAS LAW REQUIRES THAT A DEFENDANT CONVICTED OF A FELONY BE SENTENCED TO A SPECIFIC PERIOD OF INCARCERATION, AND NO SUCH PERIOD OF INCARCERATION IS IMPOSED WITH DEFERRED ADJUDICATION

In this regard, Mr. Calderon urges that deferred adjudication cannot be considered to be an aggravated felony, even under *Matter of Roldan, supra, U.S. v. Moosa,* 171 F.3d 994 (5th

13

Cir. 1999), and *Hernandez-Avalos*. The criticism of *K-V-D-* therein is *dicta*, [9] and is therefore not binding. And to the extent that *Hernandez-Avalos* is binding, it requires that the Board consult Texas law, to determine whether Mr. Calderon was convicted of a felony, and therefore, of an aggravated felony.

Under Texas law, Mr. Calderon has not been convicted of a felony. Apart from the truism that she is not considered to have been convicted at all, under Texas law, anyone convicted of a felony must be sentenced to jail time, although that sentence may be suspended, and the person placed on probation. *See,* Texas Penal Code, §§13.32 - 13.35. Therefore, anyone who is not given a specific sentence, regardless of any suspensions, cannot under Texas law be considered to have

---

[9] *See, id.* at 509 (footnote in original) (emphasis added):

However, **if we were reviewing Hernandez's removal order** on direct appeal, **and if the issue of statutory interpretation were properly preserved for review**, we would hold that the BIA's interpretation of section 924(c) is plainly incorrect and that Hernandez was an aggravated felon. We see no reason why the procedural posture of this case requires us to hold that it was fundamentally unfair to treat Hernandez as an aggravated felon because he should have the benefit of an agency's erroneous interpretation of applicable law. [FN3]

FN3. Because the question presented by this appeal relates only to the fundamental fairness of the proceeding, we need not consider Hernandez's argument that we must defer to the BIA's interpretation of these general criminal statutes. *Cf. Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 842-43 & n. 9, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984) (citations omitted)("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.... The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent. If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect.").

Such "if we were reviewing" and "if the issue of statutory construction were properly preserved" are classic indicia of *dicta.* Similarly, the Court's acknowledgment that it did not consider the possibility of deference further shows that its criticism of *K-V-D-* was *dicta*, and that said decision continues to be binding herein.

14

been convicted of a felony.  Since deferred adjudication involves no specific sentence of incarceration, Mr. Calderon cannot be considered to have been convicted of a felony under Texas law.

An alternate construction would, as noted above, involve selective application of state or federal law, simply to impose the "worst of both worlds" on an immigrant.  This in and of itself would be so arbitrary as to offend Procedural, if not Substantive Due Process.

## C.  IT VIOLATES DUE PROCESS WHERE THE BOARD OF IMMIGRATION APPEALS DOES NOT MEANINGFULLY ADDRESS ALL RELEVANT MATERIAL FACTORS IN ISSUING ITS DECISION

Although Respondents assert that the manner in which the Board of Immigration Appeals issued its decision complied with certain statutory schema, there is no indication that it also comports with the constitutional requirements of due process of law.  Mr. Calderon urges that the Fifth Circuit has reviewed the standards for issuing decision with such constitutional concerns in mind, *see Diaz Resendez v. INS*, 960 F.2d 493, (5th Cir. 1992) and *Rodriguez Gutierrez v. INS* 59 F.3d 504 (5th Cir. 1995), and in both cases held that the "BIA must meaningfully address all relevant material factors." 960 F.2d 493, 495; 59 F.3d 504, 508.

### III.  CONCLUSION

Although Respondents' pleading was captioned as a return and motion to dismiss, no jurisdictional grounds, or other bases for dismissal, were alleged.  In essence, Respondents simply argue that there Mr. Calderon did not assert any valid constitutional claims, although they neglect to even discuss the majority of the counts alleged in his petition.  Therefore, it is urged that the motion to dismiss be denied, and that the Court consider Mr. Calderon's claims for what they are:  a challenge to the constitutionality of the application of the law to a person who has relied, to his detriment, on the law as it stood at the time he negotiated his plea to the underlying criminal charges, in exchange for a grant of deferred adjudication.

15

Respectfully Submitted,

Jodi Goodwin, Attorney
Law Office of Jodi Goodwin
1322 East Tyler Avenue
Harlingen, Texas 78550
(956) 428-7212
Fed. ID.  20102
Texas Bar 00793835

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing, with proposed Order, was mailed, first-class postage prepaid, to Lisa Putnam, SAUSA, P.O. Box 1711, Harlingen, TX 78551, on December 12, 2002.

16

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

**OSWALDO CALDERON-TERRAZAS**  )
                                            )
**versus**                                  )     **C.A. NO.  B-02-145**
                                            )
**AARON CABRERA, INS ACTING**  )
       **DISTRICT DIRECTOR, and**    )
**JOHN ASHCROFT, UNITED STATES**  )
       **ATTORNEY GENERAL**      )

## ORDER DENYING RESPONDENT'S MOTION TO DISMISS

Before the Court is Respondents' Motion to Dismiss, and Petitioner's the Opposition thereto. Upon consideration of the same, and the record as a whole, the Court is of the opinion that said motion should be, and the same hereby is, **DENIED.**


DONE this ____ day of _____, 2002


at Brownsville, Texas.


_____