United States District Court
Southern District of Texas
FILED

MAY 0 5 2003

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| OSWALDO CALDERON TERRAZAS | ) | |
| Petitioner/Plaintiff | ) | |
| | ) | |
| v. | ) | C.A. No. B-02-145 |
| | ) | |
| JOHN ASHCROFT, | ) | |
| ATTORNEY GENERAL | ) | |
| OF THE UNITED STATES; | ) | |
| AARON CABRERA, ACTING | ) | |
| DIRECTOR OF DETENTION AND | ) | |
| REMOVAL FIELD OPERATIONS; | ) | |
| Respondents/Defendants | ) | |

**PETITIONER'S ADDITIONAL POINTS AND AUTHORITIES IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS**

COMES NOW Petitioner/Plaintiff, Oswaldo Calderón Terrazas, by and through his attorney of record, Jodi Goodwin, and files this his Additional Points and Authorities in support of his Petition for Writ of Habeas Corpus. Mr. Calderón in no way abandons and hereby realleges and incorporates by reference each and every allegation in his original petition for Writ of Habeas Corpus filed with this Court on July 25, 2002. Mr. Calderón likewise reiterates and affirms all of the legal arguments made before this Court on April 29, 2003. In addition to the issues common to all cases set before this Court for the consolidated hearing on April 29, 2003, Petitioner/Plaintiff further urges this Court:

**A.
MR. CALDERON'S DEFERRED ADJUDICATION IS NOT AN AGGRAVATED FELONY BECAUSE HE WAS NOT SENTENCED UNDER THE FELONY PUNISHMENT PROVISIONS OF THE TEXAS PENAL CODE.**

Mr. Calderón urged the Immigration Judge, ("IJ"), and the Board of Immigration Appeals, ("BIA"), that because adjudication was deferred and no judgment of guilt has been entered by the sentencing court, he had not suffered a "conviction" as defined at §101(a)(48) of the Immigration and Nationality Act, ("INA"), 8 U.S.C. §1101(a)(48)(A). *See* Petitioner's Notice of Appeal, filed with the BIA on March 20, 2002. Because the IJ erroneously found that he had been convicted of an aggravated felony, Mr. Calderón was denied an opportunity to apply for statutorily available relief, for which he was otherwise eligible. Mr. Calderón further submits that because he did not receive a sentence for a felony conviction under Texas law, he cannot properly be described as "an aggravated felon."

§ 12.04 of the Texas Penal Code, ("TPC"), is entitled **Classification of Felonies,** and states:

> "(a) Felonies are classified according to the relative seriousness of the offense into five categories:
> (1) capital felonies;
> (2) felonies of the first degree;
> (3) felonies of the second degree;
> (4) felonies of the third degree; and
> (5) state jail felonies.
> (b) An offense designated a felony in this code without specification as to category is a state jail felony."

Subchapter C of TPC §12 is entitled **ORDINARY FELONY PUNISHMENTS,** and states:

§ 12.32. First Degree Felony Punishment
(a) An individual adjudged guilty of a felony of the first degree shall be punished by imprisonment in the institutional division for life or for any term of not more than 99 years or less than 5 years.
§ 12.33. Second Degree Felony Punishment
(a) An individual adjudged guilty of a felony of the second degree shall be punished by imprisonment in the institutional division for any term of not more than 20 years or less than 2 years.
§ 12.34. Third Degree Felony Punishment
(a) An individual adjudged guilty of a felony of the third degree shall be punished by imprisonment in the institutional division for any term of not more than 10 years or less

than 2 years.
§ 12.35. State Jail Felony Punishment
(a) Except as provided by Subsection (c), an individual adjudged guilty of a state jail felony shall be punished by confinement in a state jail for any term of not more than two years or less than 180 days.

Texas Code of Criminal Procedure Art 42.12 § 5 is entitled, Deferred Adjudication; Community Supervision, and states, in relevant part:

"(a) Except as provided by Subsection (d) of this section, when in the judge's opinion the best interest of society and the defendant will be served, the judge may, after receiving a plea of guilty or plea of nolo contendere, hearing the evidence, and finding that it substantiates the defendant's guilt, defer further proceedings *without entering an adjudication of guilt, and place the defendant on community supervision.*"
TCCP ART 42.12, §5(a). (emphasis added).

TCCP ART 42.12 §5 (c) states, in relevant part:

"(c) On expiration of a community supervision period imposed under Subsection (a) of this section, if the judge has not proceeded to adjudication of guilt, the judge shall dismiss the proceedings against the defendant and discharge him. The judge may dismiss the proceedings and discharge a defendant,..., prior to the expiration of the term of community supervision if in the judge's opinion the best interest of society and the defendant will be served....Except as provided by Section 12.42(g), Penal Code, *a dismissal and discharge under this section may not be deemed a conviction for the purposes of disqualifications or disabilities imposed by law for conviction of an offense.*"
TCCP ART 42.12 §5 (c). (emphasis added).

According to a plain reading of the Texas Code of Criminal Procedure and the Texas Penal Code, a guilty plea and deferred adjudication does not correspond to a conviction for a felony in Texas. Every type of felony in Texas includes a sentence of imprisonment for at least 180 days. The deferred adjudication guidelines under TCCP §42.12 are wholly severed from the sentencing provisions at TPC §12.32 *et seq*. According to TPC, the result of a conviction for the least serious type of felony in Texas compels a sentence of confinement. *See* TPC § 12.35, State Jail Felony. No judgment of guilt has been ordered pursuant to TCCP §42.01 as a result of Mr.

Calderón's plea, nor has the judge proceeded to sentencing under TCCP §42.02. Because the fines included in cases where adjudication is deferred under TCCP Art. 42.12 are not the result of an entry of judgment, they are not part of the sentence imposed. Even if this Court views those requirements as a form of punishment or restriction on Mr. Calderón's liberty, because the punishment does not specify a period of confinement consistent with TPC §12.32 *et seq*, the deferred adjudication cannot be described as a felony under the TPC. Designating Mr. Calderón's deferred adjudication as a conviction for a Texas felony necessitates a determination that he has been punished with a period of incarceration while TPC Art 42.12 § 5 consists of admission of facts equal to guilt, and a period during which no sentence or punishment is imposed, unless the court finds that the defendant has committed another offense. The TPC clearly establishes that every defendant guilty of a felony will be sentenced and punished. *See* TPC §12.32 *et seq*. An individual who has never received a sentence cannot be said to be a felon in Texas. To treat Mr. Calderón as an aggravated felon when the severity of the consequences in immigration proceedings far outstrip the criminal sanction he received is fundamentally unfair and amounts to a violation of due process. Because there exists an interpretation of the definition that would avoid constitutional infirmity, this Court should find that the definition of aggravated felony does not include a sentence of deferred adjudication pursuant to TPC 42.12.

The Due Process Clause of the Fifth Amendment prohibits the interference or impairment of a fundamental right unless the law accomplishes a compelling state interest. Further, the relation between the objective of the law and the method employed to accomplish the state's aim must be necessary, and narrowly tailored to meet that end. If the government may achieve its' goal in a less burdensome way, then a law restricting a fundamental right violates Due Process. *See Moore v East Cleveland* 431 U.S. 494 (1977).

Choices and decisions concerning marriage, procreation, and raising ones' family implicate fundamental rights. The United States Supreme Court has applied strict scrutiny to laws impinging upon fundamental rights. *See Meyer v Nebraska* 262 U.S. 390 (1923), *Pierce v Society of Sisters*, 268 U.S. 510 (1925); *Skinner v Oklahoma*, 316 U.S. 535 (1942); *Griswold v Connecticut*, 381 U.S. 479 (1965); *Roe v Wade*, 410 U.S. 113 (1973).

The law must be drafted to ensure that the government can achieve its' goal in the way that is the least exacting and troublesome to those whose fundamental rights are being restricted by its' enforcement. In *Pierce v Society of Sisters, supra,* the Supreme Court voided a statute which it held:

> "unreasonably interferes with the liberty of parents and guardians to direct the upbringing and education of children under their control. As often heretofore pointed out, rights guaranteed by the Constitution may not be abridged by legislation which has no reasonable relation to some purpose within the competency of the state."

268 U.S. 510, 534-535

Personal autonomy, including the ability to rear one's child and cohabit with one's nuclear family is protected by the Due Process Clause. In *Moore v East Cleveland, supra*, the United States Supreme Court held that a housing law which separated families was unconstitutional, and noted: "The Constitution protects the sanctity of the family precisely because the institution of the family is deeply rooted in this Nation's history and tradition. It is through the family that we inculcate and pass down many of our most cherished values, moral and cultural." 431 U.S. 494, 504. They are not specifically enumerated in the Bill of Rights, yet respect for the liberty of the individual and the sanctity of the family are among the traditional values upon which our nation was founded and thrived. They are recognized by the Supreme Court within the doctrine of Substantive Due Process.

> "Due process has not been reduced to any formula; its content cannot be determined by reference to any code. The best that can be said is that through the course of this Court's decisions it has represented the balance which our Nation, built upon postulates of respect for the liberty of the individual, has struck between that liberty and the demands of organized society. If the supplying of content to this Constitutional concept has of necessity been a rational process, it certainly has not been one where judges have felt free to roam where unguided speculation might take them. The balance of which I speak is the balance struck by this country, having regard to what history teaches are the traditions from which it developed as well as the traditions from which it broke. That tradition is a living thing. A decision of this Court which radically departs from it could not long survive, while a decision which builds on what has survived is likely to be sound. No formula could serve as a substitute, in this area, for judgment and restraint.
> 
> ". . . [T]he full scope of the liberty guaranteed by the Due Process Clause cannot be found in or limited by the precise terms of the specific guarantees elsewhere provided in the Constitution. This 'liberty' is not a series of isolated points pricked out in terms of the taking of property; the freedom of speech, press, and religion; the right to keep and bear arms; the freedom from unreasonable searches and seizures; and so on. It is a rational continuum which, broadly speaking, includes a freedom from all substantial arbitrary impositions and purposeless restraints, . . . and which also recognizes, what a reasonable and sensitive judgment must, that certain interests require particularly careful scrutiny of the state needs asserted to justify their abridgment."

431 U.S. 494, 501-502 (internal citations omitted).

Mr. Calderón is a 27 year old native and citizen of Mexico who became a Lawful Permanent Resident, ("LPR"), of the United States in 1990. He has resided continuously in the United States since that date, except when he served for two and one half years with the United States Army in Manheim, Germany and Kosovo. His entire family resides in the United States.

LPR's who have lived most of their lives in the United States routinely have United States citizen spouses, children, siblings and parents. Finding that Mr. Calderón's deferred adjudication amounts to a conviction for an aggravated felony removes discretionary relief and results in lifetime separation of families. The abrupt alienation for life from one's family subsequent to a criminal conviction, punishment for which may not even include jail time, is

not narrowly tailored to meet the goal of preventing involvement by immigrants in criminal activity. Despite outstanding equities in the form of lengthy residence and strong family and community ties, no IJ has jurisdiction to consider granting relief, even in the case of an offense for which no sentence was every imposed.

Although its' opinion upheld the right of extended families to cohabit, and struck down a zoning law which impaired that right, the United States Supreme Court could have been discussing immigrant families when it stated:

> Ours is by no means a tradition limited to respect for the bonds uniting the members of the nuclear family. The tradition of uncles, aunts, cousins, and especially grandparents sharing a household along with parents and children has roots equally venerable and equally deserving of constitutional recognition. Over the years millions of our citizens have grown up in just such an environment, and most, surely, have profited from it. Even if conditions of modern society have brought about a decline in extended family households, they have not erased the accumulated wisdom of civilization, gained over the centuries and honored throughout our history, that supports a larger conception of the family. Out of choice, necessity, or a sense of family responsibility, it has been common for close relatives to draw together and participate in the duties and the satisfactions of a common home. Decisions concerning child rearing, which Yoder, Meyer, Pierce and other cases have recognized as entitled to constitutional protection, long have been shared with grandparents or other relatives who occupy the same household - indeed who may take on major responsibility for the rearing of the children.

431 U.S. 494, 504-505.

Mr. Calderón urges this Court that the definitions of "conviction" and "aggravated felony", as applied by the IJ and the BIA violate his right to substantive due process guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution. While the United States Congress has plenary power over immigrants, laws which impair a fundamental right, such as the right to raise one's family and cohabit with one's nuclear family, must be accomplished by means narrowly tailored to meet that end. Immigration laws

provide that a former LPR who is deported from the United States after having been convicted of an aggravated felony is subject to lifetime banishment from the United States. *See INA §212(h)*. The purpose of immigration laws are to provide mechanisms by which non-citizens can adapt and flourish in the United States, while protecting the population from any dangerous elements among all the new arrivals. Finding that Mr. Calderón has been convicted of an aggravated felony operates to automatically revoke residence and indiscriminately cast out persons, many of whom have lived the majority of their lives in the United States alongside United States citizen family members. There is no opportunity for a hearing or consideration of substantial equities. The means employed are not the least exacting and troublesome to those thereby affected. Because the goal of minimizing criminal activities by immigrants may be accomplished in a manner less disruptive to LPR's who have United States citizen family members, application of the definitions of "conviction" and "aggravated felony", to a person whose adjudication was deferred and whose offense does not correspond to the aggravated felony ground under federal law violates substantive due process.

### B.
### MR. CALDERON'S DEFERRED ADJUDICATION FOR SEXUAL ASSAULT OF A CHILD PURSUANT TO §22.011 OF THE TEXAS PENAL CODE IS NOT THE EQUIVALENT OF A CONVICTION FOR SEXUAL ABUSE OF A MINOR AS DEFINED AT INA §101(a)(43)(A), 8 U.S.C. §§ 1101(a)(43)(A) AND AS SUCH, §101(a)(43)(A) IS VOID FOR VAGUENESS.

The BIA overruled the IJ in *Matter of Rodriguez Rodriguez*, 22 I&N Dec. 991 (BIA 1999), and found that indecency with a child by exposure pursuant to TPC §21.11(a)(2) constitutes "sexual abuse of a minor" and thus is an aggravated felony pursuant to INA §101(a)(43)(A) 8 U.S.C. § 1101(a)(43)(A). There, the LPR was sentenced to 10 years' imprisonment for his conviction. *See Matter of Rodríguez Rodriguez, supra* at 992. The BIA

considered ordinary meaning of the statutory language, as well as the legislative history. *Id* at 994. In determining whether a particular offense falls within a specific classification, such as aggravated felony, the BIA looked to the federal definition, and utilized 18 U.S.C. §§ 2242, 2243, 2246, and 3509(a) (1994). The BIA noted: "Under 18 U.S.C. §§ 2242 and 2243, the crimes of "sexual abuse" and "sexual abuse of a minor or ward" require a sexual act, a component of which, according to 18 U.S.C. § 2246, is contact " *Id* at 995. TPC §21.11(a)(2), under which the respondent in *Rodríguez Rodríguez* was convicted does not involve contact and thus does not fall within the definition of "sexual abuse" found in federal law. Nevertheless, the BIA found that his offense was still an aggravated felony within the meaning of 8 U.S.C. § 1101(a)(43)(A). Instead of employing the definitions of sexual abuse of a minor found at 18 U.S.C. §§2242, 2243, or 2246, the BIA relied on the definition found at 18 U.S.C. § 3509(a), which describes the rights of child victims and child witnesses in the context of federal proceedings. *Id* at 997.

The federal criminal code defines "sexual abuse of a minor" to include "knowingly engag[ing] in a sexual act" with a person that is twelve to fifteen years of age. 18 U.S.C. §§ 2241(c) ("aggravated sexual abuse" of a minor), 2243(a) ("sexual abuse of a minor"). The term "sexual act" is specifically defined to require contact, penetration, or touching of the genitalia, not through the clothing, of another person. The federal code also criminalizes a knowing engagement in "abusive sexual contact" with a minor. *See* 18 U.S.C. § 2244(a).

Mr. Calderón urges this Court that the state offense can be considered sexual abuse of a minor only if TPC §22.011 is no broader than the federal offense of sexual abuse of a minor under 18 USC §2243(a). The crucial question in *Rodríguez Rodríguez, supra,* was not addressed by the majority opinion: Whether the BIA suitably relied on 18 U.S.C. § 3509 in

order to define the scope of offenses found at 8 U.S.C. § 1101(a)(43)(A).

Crimes involving sexual fondling or contact with a person 12 to 15 years of age are defined as sexual abuse of a minor or ward at 18 USC §2243(a)(1) and are properly within 8 U.S.C. § 1101(a)(43)(A). Had Congress intended the rights of child victims and child witnesses in the context of federal proceedings in 18 USC §3509 to serve as the definition for sexual abuse of a minor, Congress could easily have done so. The BIA erred in *Rodríguez Rodríguez, supra,* in relying on the erroneous federal provision in analyzing a state statute in light of the definition of aggravated felony.

Here, the relevant portion of Texas law defines child as "a person younger than 17 years of age who is not the spouse of the actor." *See* TPC §22.011(c)(1). The person with whom Mr. Calderón was sexually active was 16 years old. Therefore, Mr. Calderón could not have been prosecuted under federal law, (18 U.S.C. §2243), because the other party was older than 15. The conduct proscribed under TPC §22.011 does not fit within 8 U.S.C. § 1101(a)(43)(A). If a statute's provisions are not clearly defined, the provision should be invalidated by a reviewing court. *See Jordan v DeGeorge,* 341 U.S. 223, (1951). Mr. Calderón's deferred adjudication is not an aggravated felony described in 8 U.S.C. § 1101(a)(43)(A) because the statute is overly broad, and penalizes conduct for which he could not be prosecuted under federal law. The statute is so void as to not give notice to Mr. Calderon what activity is encompassed in §101(a)(43)(A).

### C.
### AFFIRMANCE WITHOUT OPINION VIOLATES DUE PROCESS

The IJ never declared any reasons for finding that Mr. Calderón's specific offense was a conviction for an aggravated felony. The IJ never enunciated his rationale for finding that the

state criminal violation was an offense under 8 U.S.C. § 1101(a)(43)(A), he only stated that a deferred adjudication is still a conviction, in light of BIA and Fifth Circuit decisions and that Mr. Calderón had no relief. The IJ quickly disposed of Mr. Calderón by citing two Fifth Circuit decisions concerning deferred adjudication. Most significantly, the IJ found Mr. Calderón was an aggravated felon without ever stating why. *See* OD at 3-4.

On appeal to the BIA, Mr. Calderón presented authoritative reasons demonstrating the essentiality for conscientious review of the IJ's decision, *i.e* that his conviction was not for an aggravated felony. In its decision of June 25, 2002, the BIA affirmed the decision of the IJ without comment, and summarily dismissed Mr. Calderón's appeal.

The BIA should refrain from validating a decision in which the IJ presented no substantial rationale for a crucial determination. *See* 8 C.F.R., §3.1(e)(4)(i). Due to the scanty explication by the IJ as to why the specific offense must be an aggravated felony and the substantial prejudice to Mr. Calderón as a result, his appeal should not have been summarily dismissed. Traditional notions of due process require that a matter involving so many intricate issues, yet absent detailed reasons in support of the IJ's profoundly important conclusions as to the specific aggravated felony should not be affirmed without opinion. The BIA's summary affirmance of the IJ's decision denied the petitioner due process because his initial brief on appeal correctly explicated the relevant issues which should have properly been considered by a three member panel of the BIA. A decision should not be affirmed without opinion when the appeal raises substantial legal issues and presents valid challenges to settled law. A three-member panel would have provided profound analysis of the relevant factors of record and imparted guidance in the exercise of discretion, and should have corrected the IJ's erroneous decision which resulted from the sparse inquiry upon which it is based.

Under the summary affirmance scheme, the IJ's reasons are the only ones that any court will be able to review. If these reasons do not support the result, or if the reasons and the result are erroneous, the BIA should reverse and remand. Here, when the BIA affirmed the decision of the IJ without opinion, Mr. Calderón was denied due process because no reason was provided for the IJ's decision. *See Panrit v INS,* 19 F.3d 544, 546 (10th Cir. 1994), *citing Turri v INS,* 997 F.2d 1306, 1310, (10th Cir. 1993); *Mousa v INS,* 223 F.3d 423, 430 (7th Cir. 2000). Summary affirmance *per se* violates due process when complex factual circumstances give rise to weighty issues of law, and lifetime banishment from a country in which a long time resident has substantial stake is in the balance. The BIA's review of the decision of the IJ did not comport with the standards promulgated by the Fifth Circuit in *Díaz Resendez v INS,* 960 F.2d 493, (5th Cir. 1992) and *Rodríguez Gutierrez v INS,* 59 F.3d 504 (5th Cir. 1995). In both cases, the Fifth Circuit held that "the BIA must meaningfully address all relevant material factors." 960 F.2d 493, 495, 59 F.3d 504, 508. Mr. Calderón implores this Court that the determination as to why the particular criminal offense is an aggravated felony is a material relevant factor which remains unaddressed by the IJ and the BIA. The BIA's cursory dismissal of Mr. Calderón's appeal, when he presented carefully considered arguments delineating a legitimate challenge to the rationale underlying the decision does not measure up to traditional notions of fundamental fairness

The petitioner's guilty plea is not a conviction which rendered him deportable as an aggravated felon. Application of the proper standard of law by the IJ in determining the underlying ground of aggravated felony would have made a difference in the result. Had the IJ properly considered the prominent issues, or had the BIA engaged in a thorough review of the IJ's rapid conclusion, the outcome would have changed.

Two circuits have recently issued decisions related to the BIA's use of the affirmance without opinion. *Albathani v. INS*, 318 F.3d 365 (1st Cir. 2003) and *Gonzalez-Oropeza v. U.S. Attorney General*, 2003 U.S. App. LEXIS 2974 (11th Cir. Feb. 19, 2003). In *Albathani*, the 1st Circuit noted initially that the Immigration Judge had made detailed findings of fact and conclusions of law relating to Albathani's credibility as it related to his asylum application. The 1st Circuits ruling in *Albathani* is limited to its set of facts, that being that the Immigration Judge issued a reasoned decision. The 1st Circuit expressed concern that the "very nature of the one-line summary affirmance may mean that BIA members are not in fact engaged in the review required by regulation and courts will not be able to tell." *Albathani* at *35-36.

Neither the Immigration Judge nor the BIA issued a well reasoned opinion in Mr. Calderon's case. In addition, Mr. Calderon's case is not squarely controlled by BIA precedent and involves such substantial and complicated issues that the use of the affirmance without opinion is not provided for in the regulations.

In *Gonzalez-Oropeza, supra*, the 11th Circuit held that the BIA had not misapplied the affirmance without opinion regulation. Its decision rests largely on the finding that Mr. Gonzalez-Oropeza was not eligible for the relief he sought and thus, his case was squarely controlled by BIA precedent. As indicated above, Mr. Calderon's case is not squarely controlled by precedent, and he asserts he is not removable on the charges in the Notice to Appear. As cited above, the Fifth Circuit requires, at a minimum, that the Board explain the reasons for its decision. Mr. Calderon asserts the BIAs summary affirmance nor the IJ's cursory decision explain the basis for a decision.

Because of the summary affirmance regulations, the result is mass appellate review at the BIA that is review is name only – not substance. INA §101(a)(47) clearly states that an order

of deportation becomes administratively final only upon a determination by the BIA or the expiration of the period for an appeal to the BIA. In other words, the statute contemplates a statutory right to an administrative appeal, but where that right is whittled away by the affirmance without opinion procedure, it seeks to exist.

The *Albathani* court was extremely concerned with the BIAs systemic misapplication of the affirmance without opinion procedure to dispose of cases. The 1st Circuit noted that evidence of systemic violations by the BIA of its regulations might warrant a different outcome. Mr. Calderon's case is an example of such a misapplication.

### D.

### THIS COURT HAS JURISDICTION OVER THE INSTANT ACTION.

In *Flores-Garza v. Ashcroft*, __ F.3d __ (5th Cir. 2003), the Court concluded, as it had in *Lerma de Garcia v. INS,* 141 F.3d 215 (5th Cir. 1998), that the jurisdiction-stripping provisions of IIRIRA, (here, 8 U.S.C. §1252(a)(2)(C)), are absolute with respect to cases within their scope, and preclude consideration even of the constitutional questions raised therein. *Id.* at Headnote 1. [1]

Mr. Calderon contends that *Flores-Garza* controls his case. There is no question but that, when he filed his petition for habeas corpus, he stood "convicted" within the meaning of *Matter of Roldan,* 22 I&N Dec. 512 (1999), and *Moosa v. INS,* 171 F.3d 994 (5th Cir. 1999), of an offense relating to a controlled substance. His statutory claims had merit only as a suggested escape from a constitutional swamp, much as in *Zadvydas v. Davis,* 533 U.S. 678

---

[1] Apparently, West "scooped" the Fifth Circuit, and publicized the Opinion before it was released. However, the undersigned has found no differences between the opinion as reported by West on April 17, 2003, and the official one, released May 2, 2003, and for convenience, will cite the West version.

(2001), where the Supreme Court read a term, ("reasonable"), into a detention statute in order to avoid constitutional problems. And the Fifth Circuit could not have delved into the constitutional issues, unless and until it had determined that he did not fall under 8 U.S.C. §1252(a)(2)(C). Under those circumstances, there would have been no basis for a statutory challenge, and therefore, under *Flores-Garza*, no jurisdiction in the Fifth Circuit to hear his case.

Alternatively, to the extent that *Flores-Garza* did not completely close the door on constitutional challenges which would render the person not subject to removal, such a procedure is foreclosed by the reasoning of *Lerma de Garcia,* and *Max-George*. To adopt it, the Court would have to repudiate its finding in *Max-George* that the language creating the jurisdictional bar in the permanent rules, (8 U.S.C. §1252(a)(2)(C)), was even **stronger** than that examined in *Lerma de Garcia*. In fact, it would have to find it *weaker,* before it could find that the statutory bar did not forestall consideration of issues that could be addressed in habeas corpus. *See also, Cano-Miranda v. Ashcroft,* 262 F.3d 477 (5th Cir. 2001) (court erred in dismissing a §2241 petition complaining of denial of due process in removal proceedings for want of jurisdiction).

Nor would the scope of review at the Fifth Circuit be co-extensive with that of habeas. [2] Since resolution of some claims requires evidentiary proceedings, and 8 U.S.C. §1252(a)(1) prohibits the Fifth Circuit from remanding for this purpose under 28 U.S.C. §2347(c), [3] it

---

[2] *See, Swain v. Pressley,* 430 U.S. 372, 381 (1977) ("the substitution of a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention does not constitute a suspension of the writ of habeas corpus").

[3] *See, Garcia v. Boldin,* 691 F.2d 1172, 1182 (5th Cir. 1982) (where alien alleges Due Process violations which are extrinsic to the record, the Court may remand the case to the agency for

must be presumed that, to the extent that it considered the issue, Congress intended that if an immigrant could not seek statutory review of an order, claims arising in removal proceedings which could only be resolved with extrinsic evidence could be addressed in habeas corpus. [4]

Alternatively, since this Court has habeas jurisdiction to hear those issues which could not, under any theory, have been reached in direct review by the Fifth Circuit, (such as consideration of Mr. Calderon's statutory construction arguments), it can also hear all other claims through its supplemental jurisdiction, 28 U.S.C. §1367. This is particularly appropriate to avoid splitting the case into two pieces: one part to be heard initially by the Fifth Circuit, and the other, by this Court. And in the further alternative, given the confusion over the issue of jurisdiction, it is clear that there was no "deliberate by-pass" of Fifth Circuit review within the meaning of *U.S. ex rel Marcello v. INS*, 634 F.2d 964,970 (5th Cir. 1981), cited with approval in *INS v. St Cyr*, 533 U.S. 289,310 (2001), and Mr. Calderon may therefore seek habeas review under 28 U.S.C. §2241.

Indeed, because Mr. Calderon filed his habeas within the thirty day time frame for filing a petition for review, this Court could, as INS urges, transfer it to the Fifth Circuit. However, on transfer, the Fifth Circuit could not consider Mr. Calderon's statutory construction arguments. So transfer would accomplish little more than delay: and in this case, justice delayed would, in all probability, be justice denied. Mr. Calderon has already been detained for sixteen months. It is questionable whether he and his family could tolerate an additional

---

further inquiry and findings under 28 U.S.C. §2347(c)).

[4] *See, Turner v. Johnson,* 106 F.3d 1178, 1183 (5th Cir. 1997) ("A federal habeas court must allow discovery and an evidentiary hearing only where a factual dispute, if resolved in the petitioner's favor, would entitle him to relief...").

year or so while the case went to the Fifth Circuit, was denied for lack of jurisdiction, and was then returned to this Court to do what he is begging the Court to do now: make a determination on the merits.

### E.
### HABEAS REVIEW CAN REACH THE ISSUES RAISED HEREIN

In *St Cyr, supra* at 310, The Court held that the 1961 Immigration Act did not affect the availability of habeas corpus review of deportation orders under 28 U.S.C. §2241. *St. Cyr* also held that IIRIRA did not affect habeas corpus. Therefore, this Court has full habeas jurisdiction. It can, for example, receive evidence, to the extent necessary to resolve Mr. Calderon's claims. *Turner v. Johnson, supra.* As discussed in *Heikkila v. Barber*, 345 U.S. 229 (1953), prior to the 1952 Immigration Act, Congress had removed federal jurisdiction to review *any* deportation order, to the fullest extent permissible under the Constitution. Habeas corpus provided the only relief available during that period. So the scope of habeas review now cannot be more restrictive than it was during the Heikkila period, and encompasses "Due Process" in the broadest sense of that phrase. For example, in *Kwock Jan Fat v. White*, 253 U.S. 454 (1920), decided during the Heikkila period, the Court remanded an exclusion case for a habeas hearing, and gave the following summary of the scope of such habeas review, *id.* at 457-8:

> It is fully settled that the decision by the Secretary of Labor, of such a question as we have here, is final, and conclusive upon the courts, unless it be shown that the proceedings were 'manifestly unfair,' were 'such as to prevent a fair investigation,' or show 'manifest abuse' of the discretion committed to the executive officers by the statute, Low Wah Suey v. Backus, supra, or that 'their authority was not fairly exercised, that is, consistently with the fundamental principles of justice embraced within the conception of due process of law,' Tang Tun v. Edsell, Chinese Inspector, 223 U. S. 673, 681, 682, 32 Sup. Ct. 359, 363 (56 L. Ed. 606). The decision must be

after a hearing in good faith, however summary, Chin Yow v. United States, 208 U. S. 8, 12, 28 Sup. Ct. 201, 52 L. Ed. 369, and it must find adequate support in the evidence, Zakonaite v. Wolf, 226 U. S. 272, 274, 33 Sup. Ct. 31, 57 L. Ed. 218.

It would be both "manifestly unfair," and inconsistent "with the fundamental principles of justice embraced within the conception of due process of law," to deport Mr. Calderon, where, he relied on the definition of deferred adjudication at the time of his plea and such grave constitutional implications exist if this Court adopts the analysis of the Service.

Consequently, it is urged that Mr. Calderon is not subject to removal. His deferred adjudication is not a conviction of a felony nor is it an aggravated felony. The instant petition should be granted, and he should be released forthwith from INS custody, where he has been since December, 2001.

Respectfully submitted,

Jodi Goodwin
Attorney for Petitioner/Plaintiff
Fed ID No. 20102
State Bar No. 00793835


Law Office of Jodi Goodwin
1322 East Tyler Avenue
Harlingen, Texas, 78550
956 428 7212
956 428 7360 (fax)

CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing Points and Authorities was served upon the Special Assistant United States Attorney, Lisa Putnam, at 1709 Zoy Street, Harlingen, Texas 78550, by hand delivery, on this the 5th day of May, 2003.

_____
Jodi Goodwin